UNITED STATES of America, Appellee,

v.

Yonatan TEFFERA, a/k/a Tony Johnson, Appellant.

No. 91–3223.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 1, 1993.

Decided Feb. 19, 1993.

Diane Lepley (appointed by this Court), for appellant Yonatan Teffera.

James H. Dinan, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John R. Fisher and Elizabeth Trosman, Asst. U.S. Attys., were on the brief, for appellee.

Before WALD, RUTH BADER GINSBURG and SILBERMAN, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

Yonatan Teffera challenges the sufficiency of the evidence produced at trial to support his conviction for possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1). More specifically, Teffera contends that there was insufficient evidence to sustain a finding that he either constructively possessed the drugs in question or aided and abetted their possession. We agree and, accordingly, reverse his conviction.[1]

## I. FACTS

At approximately 11:15 p.m. on November 4, 1990, Special Agent Gerald Crispino observed appellant Teffera get off the #1645 bus from New York at the Greyhound/Trailways bus terminal in Washington. Teffera was accompanied by another individual, later identified as Thomas Cobb. Agent Crispino, suspecting that the two men might be carrying drugs, alerted his partner, Detective Vance Beard, to their presence. Detective Beard's attention, however, focused initially on a woman who arrived on the same bus. After interviewing her, Detective Beard saw Teffera standing alone near the taxi stand on First Street just outside the station. Detective Beard approached Teffera, identified himself, and asked if he could speak to him. Teffera agreed to talk, and, in response to Beard's inquiries, identified himself as Tony Johnson and said that he lived in Washington but had been in New York for several days. Teffera also told Beard that he was travelling alone and that he was going to visit an uncle who lived on Columbia Road in Washington. Detective Beard then asked for and received consent to search Teffera's person. That search revealed no drugs, so Beard thanked Teffera for his cooperation and walked back into the bus terminal.

While interviewing Teffera, Beard noticed Cobb exit the terminal, glance over at Beard and Teffera talking, and make a U-turn into the station again. This conduct aroused Beard's suspicions. So, when Beard returned to the station after talking to Teffera and spotted Cobb waiting in line at a fast food counter, he decided to follow him. Beard, now joined by Crispino, saw Cobb walk out of the station, join up with Teffera and Derrick Johnson—a man whom Beard knew to be a gypsy cab driver—and head down the street toward Johnson's cab. When the officers caught up with Cobb, he was seated in the right rear seat of the cab. Beard approached the cab and tapped on the window next to Cobb. After Cobb opened the door, Beard identified himself and asked for permission to speak with him. Beard then asked Cobb if he had come to Washington on a bus; Cobb said "no" and explained that he had come to the terminal to pick up his "buddy" Teffera, whom he was now taking back to Cobb's home in Marlow Heights, Maryland. After more questioning, Cobb consented to a search of his person.

Beard's search of Cobb was more fruitful than his previous search of Teffera. Beard discovered a large plastic bag con-

---

1. Teffera's appeal was consolidated with that of Thomas Cobb. We affirm Cobb's conviction in a separate order issued today. Also, since Teff-era has been imprisoned for well over a year, we instruct the clerk of this court to issue the mandate in his case immediately.

taining chunks of rock cocaine hidden inside the crotch area of Cobb's pants. Cobb was then arrested. After Cobb was handcuffed, Teffera exclaimed, "I don't know him. I don't know him." He too was then arrested, and a subsequent search of his body produced $130 in cash, a photograph of Teffera and Cobb together, and a New York to Washington bus ticket. On the back seat of the cab, the officers found another New York to Washington bus ticket and a second photo of Cobb and Teffera. The two bus tickets were subsequently found to be consecutively numbered and to have been paid for in cash by one person at 5:09 p.m. on November 4.

Both Cobb and Teffera were indicted and tried for possession of cocaine base with intent to distribute. At trial, the government presented the officers' testimony as to the events recounted above. Additionally, in an effort to connect Teffera with the drugs found concealed on Cobb, the government presented the expert testimony of Detective David Stroud. Stroud opined that drug couriers sometimes work in teams. In those cases, according to Stroud, the person not carrying the drugs is there (1) to protect the "mule"—the person actually carrying the drugs—from being robbed; (2) to insure that the mule does not abscond with the drugs; and (3) to divert the police's attention from the mule. Detective Stroud further testified that in the case of two couriers, they often split up after reaching a bus or train terminal and later meet at a prearranged location.

At the end of the government's case-in-chief, Teffera moved, unsuccessfully, for a judgment of acquittal. Teffera presented no defense evidence, and the jury returned a guilty verdict as to both Cobb and Teffera on April 15, 1991.

## II. Discussion

■ On appeal, Teffera contends that the government's evidence was insufficient for a reasonable juror to find beyond a reasonable doubt that he was guilty of possession with intent to distribute the cocaine found in Cobb's pants. The standard for overturning a jury verdict for insuffi-

cient evidence is, from a defendant's viewpoint, daunting. To recite the familiar litany: We review the record only to determine whether, viewing the evidence in the light most favorable to the government, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). To be sufficient, the government's evidence need not exclude all reasonable hypotheses of innocence or lead inexorably to the conclusion that the defendant is guilty. *See United States v. Lam Kwong-Wah*, 924 F.2d 298, 302 (D.C.Cir.1991). Finally, in evaluating the government's proof, we make no distinction between direct and circumstantial evidence. *See id.* at 303. Our review is not entirely toothless, however: "We do not ... fulfill our duty through rote incantation of the[ ] principles [outlined above] followed by summary affirmance. We must ensure that the evidence adduced at trial is sufficient to support a verdict as a matter of law. A jury is entitled to draw a vast range of reasonable inferences from evidence, but may not base a verdict on mere speculation." *United States v. Long*, 905 F.2d 1572, 1576 (D.C.Cir.), *cert. denied*, 498 U.S. 948, 111 S.Ct. 365, 112 L.Ed.2d 328 (1990).

■ Here, the government alleges that there are two analytical paths that a reasonable juror might have followed to the conclusion that Teffera was guilty of possession of the drugs found concealed inside Cobb's trousers; the hypothetical juror could have determined that Teffera committed the substantive crime of possession by aiding and abetting Cobb's possession or by constructively possessing the drugs himself. We assess those arguments in turn.

### A. *Aiding and Abetting*

■ Under 18 U.S.C. § 2(a), a person who "aids, abets, counsels, commands, induces, or procures" a crime is punishable

as a principal for that crime.[2] To prove that a defendant aided and abetted the possession of illegal narcotics, the government need not show that a defendant ever physically possessed or otherwise controlled the movement of the drugs; rather, it must demonstrate "sufficient knowledge and participation to indicate that [the alleged aider and abettor] knowingly and wilfully participated in the offense in a manner that indicated he intended to make it succeed." *United States v. Raper,* 676 F.2d 841, 849 (D.C.Cir.1982); *see also United States v. Peoni,* 100 F.2d 401, 402 (2d Cir.1938) (L. Hand, J.) (aider and abettor must "associate himself with the venture, ... participate in it as in something that he wishes to bring about, ... seek by his action to make it succeed").[3]

According to the government, the evidence shows that Teffera knowingly sought to facilitate Cobb's possession of the drugs by acting either as a lookout or as a diversion so that Cobb could escape detection as he passed through the bus station. To support this theory, the government highlights the following evidence: (1) the bus tickets, photos and testimony that demonstrate that Cobb and Teffera were travelling together; (2) Teffera's use of a false name and his false statements that he was travelling alone and was going to Columbia Road in Washington; (3) the expert testimony of Detective Stroud that a drug courier is often accompanied by a second person who acts as a diversion or lookout; and (4) the testimony that Cobb and Teffera got off the bus together, split up, and then reunited before leaving the bus terminal. We find, however, that based on this evidence alone, a reasonable juror could not find beyond a reasonable doubt that Teffera knowingly traveled with someone who was carrying drugs, much less that he actively assisted in the drug's transport.

■ The government's aiding and abetting theory runs into rough sledding from the outset. The most basic prerequisite for an aiding and abetting conviction is proof that the alleged accomplice knew of the criminal venture's existence. *See, e.g., Raper,* 676 F.2d at 849. Here, the government produced no direct evidence that Teffera knew that Cobb possessed the cocaine hidden under his clothes. The government asserts, however, that a reasonable juror could infer from Teffera's behavior that Teffera knew about Cobb's possession of the drugs. More specifically, the government argues that Teffera's false answers in response to police questioning that he was travelling alone and that he was heading to Columbia Road in Washington show (1) that Teffera wanted to disassociate himself from Cobb and (2) that the effort to separate himself from Cobb is proof that Teffera knew of Cobb's illegal possession of cocaine.

■ While circumstantial evidence may of course sustain the jury's verdict, in this case the government's web of inference is too weak to meet the legal standard of sufficiency. There are innumerable reasons why Teffera might have wanted to distance himself from Cobb. For example, Teffera may have known that Cobb was frequently in trouble with the law and wished to avoid getting caught up in the same net with Cobb. Or, Teffera may have suspected that Cobb was currently involved in some sort of criminal venture, but did not know what the specific venture was—an inference that is particularly plausible here since the only direct evidence of Cobb's criminal activity was hidden beneath Cobb's clothes.[4] Courts have found

---

**2.** We have recognized that a person may be convicted of aiding and abetting the possession of drugs. *See United States v. Poston,* 902 F.2d 90, 93 (D.C.Cir.1990).

**3.** The technical elements of aiding and abetting are: (1) the specific intent to facilitate the commission of the crime by another; (2) "guilty knowledge" by the alleged abettor; (3) commission of the substantive offense by someone else; and (4) assistance or participation in the com-

mission of the offense. *See United States v. Poston,* 902 F.2d 90, 93 (D.C.Cir.1990) (quoting *United States v. Raper,* 676 F.2d 841, 849 (D.C.Cir.1982)).

**4.** Of course, if Teffera knowingly performed as an active lookout for a criminal operation whose general object he was aware of, but without knowledge of the exact nature of the operation, he could be found guilty on an aiding and abetting theory.

that evidence that implies this sort of general knowledge of criminality afoot is insufficient to sustain a conviction for aiding and abetting a specific crime. *See United States v. Pena,* 983 F.2d 71, 72–73 (6th Cir.1993) (automobile passenger's direct admission that she "felt" something illegal was occurring around her was not sufficient to show that she knew of cocaine hidden in the vehicle); *United States v. Nusraty,* 867 F.2d 759, 765, 766–67 (2d Cir.1989) (false exculpatory statements may be probative of defendant's knowledge that he was "caught up in a situation involving criminal activity," but they were not sufficient to show that defendant knew of the specific conspiracy charged by the government); *cf. United States v. Salmon,* 944 F.2d 1106, 1114 (3d Cir.1991) (even though defendant's lookout activities demonstrated that he knew he was assisting in some criminal enterprise, that conduct provided insufficient evidence that he knew that a controlled substance, and not other contraband, was concealed in the brown paper bag that was the subject of the transaction), *cert. denied sub nom. Washington v. United States,* — U.S. —, 112 S.Ct. 1213, 117 L.Ed.2d 451 (1992). As in those cases, without any other direct or circumstantial evidence tending to show Teffera's knowledge of the drugs hidden on Cobb's person, we do not think that a reasonable juror could find beyond a reasonable doubt that Teffera's lies to the police indicated that he knew that Cobb was carrying drugs. And, absent such a finding, Teffera's conviction on an aiding and abetting theory cannot stand.

■ But, in any case, it is not a crime simply to travel—even knowingly—with someone who is carrying drugs; to be liable for the substantive offense, one must actively seek to aid or assist the person in possessing the drugs. *See United States v. Stanchich,* 550 F.2d 1294, 1300 (2d Cir. 1977) (Friendly, J.) ("[M]ere negative acquiescence ... in the criminal conduct of others, even with guilty knowledge, is not sufficient to establish aiding and abetting. An aider and abettor must have some interest in the criminal venture."). Thus, the prosecution had to show not only that Teffera knew about Cobb's transportation of the drugs, but also that Teffera actually participated in ensuring that Cobb's possession went undetected.

This the government has utterly failed to do. It first argues that Teffera demonstrated his stake in the venture by acting as a lookout. But the evidence is woefully insufficient to support this allegation. Teffera's movements as he passed through the station are perfectly consistent with innocence and raise no inference that he was a lookout: He got off a bus with a friend, went to get a cab while the friend stopped to pick up a snack, and then met up with the friend again to leave. *Cf. Reid v. Georgia,* 448 U.S. 438, 441, 100 S.Ct. 2752, 2754, 65 L.Ed.2d 890 (1980) (per curiam) (fact that defendant preceded companion through airport concourse was insufficient to create reasonable suspicion to justify a *Terry* stop). In contrast to this case, cases where courts have upheld aiding and abetting convictions based on lookout theories typically feature evidence of affirmative behavior in furtherance of such a role. *See United States v. Padilla,* 961 F.2d 322, 325 (2d Cir.) (aiding and abetting conviction upheld on evidence that defendant was scanning the airport terminal for police), *cert. denied sub nom. Torres v. United States,* — U.S. —, 113 S.Ct. 138, 121 L.Ed.2d 91 (1992); *United States v. Martin,* 920 F.2d 345, 347–48 (6th Cir.1990) (aiding and abetting conviction upheld where evidence included the fact that, as two defendants made their way through the airport, the alleged aider and abettor was "constantly watching" the other defendant's activities from behind), *cert. denied,* — U.S. —, 111 S.Ct. 2038, 114 L.Ed.2d 122 (1991); *Poston,* 902 F.2d at 95–96 (sufficient evidence to convict on lookout theory where the defendant, after dropping off a friend who was to make a drug sale, drove to the street corner where he might better see police coming to the scene); *United States v. Garcia,* 866 F.2d 147, 152 (6th Cir.1989) (conviction upheld where government showed, *inter alia,* that there was signalling between defendants in airline terminal).

Although it appears that similar evidence may have been available to the government in this case, that evidence was never introduced at trial and thus cannot support the jury's verdict. During closing argument, the prosecutor repeatedly referred to Detective Beard's alleged testimony that Teffera made eye contact with Cobb as Teffera was being interviewed by Beard, and that this eye contact alerted Cobb of the police presence and prompted Cobb to about-face back into the station. As the government now concedes, however, Detective Beard testified to those facts at the suppression hearing, *not* at the trial. *See* Appellee's Brief at 40. Stripped of this alleged eye contact, there is nothing about Teffera's conduct that raises an inference that he was playing the lookout role, and any such conclusion would have to be based on conjecture.[5]

That leaves us with the government's theory that Teffera acted as a diversion for Cobb. In contrast to the government's lookout argument, the government does have some evidence that supports this hypothesis: Teffera's false statements to Detective Beard that he was travelling alone and that he was going to Columbia Road could have been designed to divert attention from Cobb, and thus to aid Cobb in escaping from the bus terminal. The government's problem, however, is that those misstatements are at least equally consistent with other plausible hypotheses. For example, even if Teffera knew that Cobb was transporting drugs (a fact that, as noted above, we do not think the government has proved sufficiently), Teffera's attempt to distance himself from Cobb is just as consonant with an innocent person's fear of being associated with a guilty person as it is with an intent to help Cobb get out of the station undetected. Given the lack of any other incriminating evidence against Teffera, the conclusion that the lies

were an attempt to divert attention from Cobb and not the reasonable reaction of a scared but noninvolved acquaintance, crosses the line from permissible inference to improper speculation. *Cf. Long*, 905 F.2d at 1576 ("A jury is entitled to draw a vast range of reasonable inferences from evidence, but may not base a verdict on mere speculation."). While we recognize that the government's proof need not be so certain as to exclude all inferences of innocence, in a case where the government's overall evidence of guilt is so thin, the alternate hypotheses consistent with innocence become sufficiently strong that they must be deemed to instill a reasonable doubt in our hypothetical reasonable juror. Even looking at the government's evidence in the most favorable light, we think that line has been crossed over here. *See United States v. Jenkins*, 981 F.2d 1281, 1284 (D.C.Cir.1992) (action that was neither inconsistent with guilt nor particularly probative of it did not provide sufficient evidence); *Nusraty*, 867 F.2d at 764–65 (even with circumstantial evidence of false statements, proof was "too thin" to show knowing involvement in criminal conspiracy).

### B. *Constructive Possession*

■ Turning now to the government's claim that the evidence would permit a reasonable juror to find that Teffera constructively possessed the drugs, we encounter many of the same problems that infected its aiding and abetting theory. First, constructive possession must be knowing. *See Jenkins*, 981 F.2d at 1283. Thus, the difficulties outlined above in inferring from Teffera's behavior that he knew that Cobb possessed drugs are equally cogent here.

Second, constructive possession requires a showing of control and dominion over the contraband; there must be "some action,

**5.** Finally, we note that Teffera's movements as testified to at trial are inconsistent with the government's own expert testimony about a lookout's functions. According to Detective Stroud, the lookout is supposed to protect the mule from a robbery and make sure that the mule does not sneak away with the drugs. After Teffera left Cobb's side, Teffera was in no position to fulfill either of those roles. Standing outside the terminal, he could not "watch Cobb's back" or make sure that Cobb did not "get greedy" and run off with the drugs. Thus, the expert testimony provides scant support for the government's argument that Teffera was a lookout.

some word, or some conduct that links the individual to the narcotics and indicates that he had some stake in them, some power over them." *United States v. Pardo,* 636 F.2d 535, 549 (D.C.Cir.1980); *see also United States v. Foster,* 783 F.2d 1087, 1089 (D.C.Cir.1986) (evidence must show that defendant had a *"substantial* voice vis-a-vis the [drugs]" (emphasis in original; internal quotation omitted)). The only evidence that the government musters that even arguably shows Teffera's control of the drugs is, again, Teffera's lies to Detective Beard. According to the government, Teffera's falsehoods are "acts that indicate a consciousness of guilt," Appellee's Brief at 30, which together with his proximity to the drugs establish his constructive possession. But, as we have noted, Teffera's misstatements provide insufficient evidence that he was even involved in the scheme to transport the drugs. They provide even weaker support for the notion that Teffera actually controlled the drugs found secreted on Cobb's body. *Cf. United States v. Byfield,* 928 F.2d 1163, 1167 (D.C.Cir.1991) (jury could reasonably conclude that the defendant possessed drugs found in a tote bag carried by companion because the defendant was seen controlling the companion's—and thus the drugs'— movements as they walked through the train station and because shoe box found in the tote bag matched the shoes defendant was wearing). It would be a logical leap of the first magnitude to infer from Teffera's false statements not only that he was part of a drug transporting scheme, but also that he had the authority to guide the drugs' movements. Needless to say, we do not think that a rational juror could make that jump.

## CONCLUSION

The responsibility for drawing inferences from facts lies primarily with the jury, and we impinge on the jury's discretion in that regard only when we are convinced that its verdict violates the defendant's due process right to be convicted upon "proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970). Because, however, after a careful review of the evidence, we are persuaded that no reasonable juror could have concluded beyond a reasonable doubt that Teffera was an aider and abettor of Cobb's possession of the drugs or was in constructive possession of the drugs himself, we reverse his conviction.[6]

*So ordered.*

---

**6.** Because we find that there was insufficient evidence to convict Teffera, we need not address Teffera's other claims. We do note, however, that even if we found that the evidence was sufficient to support the verdict, we would have had to reverse because of the prosecutor's repeated references during closing argument to the alleged eye contact between Teffera and Cobb. No evidence of this fact was adduced at trial, and these remarks were clearly improper. It is true that we would normally not find such remarks sufficiently prejudicial to warrant reversal when the trial judge gives a cautionary instruction on this point. *See United States v. Perholtz,* 842 F.2d 343, 361–62 (D.C.Cir.) (where offending comments amount to only a couple of lines in summation and did not go to the central issues in the case, jury instructions were sufficient to protect defendant's interests), *cert. denied,* 488 U.S. 821, 109 S.Ct. 65, 102 L.Ed.2d 42 (1988). But a curative instruction would not have sufficed here. The prosecutor referred repeatedly to this phantom evidence, it was a key part of his closing remarks, and the government's other evidence was weak. *Cf. id.* (noting that the strength of the prosecution's case strongly militated against any finding of prejudice from the prosecutor's improper remarks). In this context, the improper remarks may very well have tipped the scales for the jury against Teffera. Thus, we would have reversed Teffera's conviction on this separate ground even were we to find the government's evidence legally sufficient.