**PUBLISH**

FILED
United States Court of Appeals
Tenth Circuit

February 21, 2024

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JUANITA VIRIDIANA GARCIA
RODRIGUEZ,

    Defendant - Appellant.

No. 22-6194

_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. 5:20-CR-321-F-2)**

_____

Gregory M. Acton, Acton Law Office, PC, Albuquerque, New Mexico, for
Defendant-Appellant.

Thomas B. Snyder, Assistant United States Attorney (Robert J. Troester,
United States Attorney, with him on the brief), Oklahoma City, Oklahoma,
for Plaintiff-Appellee.

_____

Before **MATHESON**, **BACHARACH**, and **MORITZ**, Circuit Judges.

_____

**BACHARACH**, Circuit Judge.

_____

This appeal stemmed from two individuals' cross-country car trip. Inside the car were secret compartments containing bundles of methamphetamine. But to the casual observer, the car looked like any other car.

The driver apparently knew about the secret compartments of methamphetamine, but did the passenger? It's possible, but there was no evidence that

- the driver had told the passenger about the methamphetamine or

- the passenger had detected the secret compartments.

Without such evidence, could a reasonable jury find the passenger guilty of crimes that required her knowledge of the drugs? We answer *no*.

**1.    Methamphetamine is hidden inside secret compartments.**

The driver was Mr. Tony Garcia; the passenger was Ms. Juanita Viridiana Garcia-Rodriguez. The two had been a couple and had three children together.

Mr. Garcia and Ms. Garcia-Rodriguez lived in California, and Mr. Garcia apparently agreed to transport methamphetamine from Bakersfield, California to Oklahoma. Mr. Garcia had planned to take Ms. Garcia-Rodriguez's brother on the trip and had arranged to pay him. At the last minute, however, Mr. Garcia told the brother that the trip was cancelled. Mr. Garcia then invited Ms. Garcia-Rodriguez, and she accepted.

2

After they reached Oklahoma, the police stopped Mr. Garcia for traffic violations. The stop led police officers to search the car, and they eventually found

- a bag of methamphetamine hidden inside the rear fender well,

- two bundles of methamphetamine hidden in the panels for the rear passenger-side door, and

- eleven bundles hidden in the panels for the rear door on the driver's side.

The methamphetamine weighed about 29 pounds.

## 2.    Ms. Garcia-Rodriguez is convicted.

Ms. Garcia-Rodriguez went to trial on charges of

- conspiracy to possess methamphetamine with the intent to distribute (21 U.S.C. §§ 841(b)(1)(A), 846) and

- interstate travel in aid of a drug-trafficking enterprise (18 U.S.C. § 1952(a)(3)).

After the prosecution rested, Ms. Garcia-Rodriguez moved for a judgment of acquittal. The district court denied the motion. Ms. Garcia-Rodriguez did not testify at trial, and the jury found her guilty on the conspiracy and interstate travel charges.[1]

---

[1]     Ms. Garcia-Rodriguez was also charged with possession of methamphetamine with intent to distribute (21 U.S.C.§ 841(a)(1)) and possession of a firearm in furtherance of a drug trafficking crime (18 U.S.C. § 942(c)(1)(A)). The jury found her not guilty on these charges.

### 3.     The standard of review requires more than speculation.

Ms. Garcia-Rodriguez appealed on the ground that the evidence was insufficient to show guilt. In addressing the sufficiency of the evidence, we engage in de novo review. *United States v. Yurek*, 925 F.3d 423, 430 (10th Cir. 2019). This review entails consideration of the evidence in the light most favorable to the prosecution. *Id.* We may reverse only if no reasonable factfinder could have found guilt beyond a reasonable doubt. *Id.* To find guilt beyond a reasonable doubt, the factfinder could rely on the evidence and reasonable inferences drawn from the evidence, but couldn't speculate or resort to conjecture. *United States v. Arras*, 373 F.3d 1071, 1073–74 (10th Cir. 2004). We thus can't "uphold a conviction obtained by piling inference upon inference." *United States v. Valadez-Gallegos*, 162 F.3d 1256, 1262 (10th Cir. 1998).

### 4.     To convict, the prosecution needed to prove Ms. Garcia-Rodriguez's knowledge of the methamphetamine.

On the charge of conspiracy to distribute methamphetamine, the prosecution needed to show that (1) at least two individuals had agreed to violate the law, (2) Ms. Garcia-Rodriguez had known the essential objectives of the conspiracy, (3) she had knowingly and voluntarily participated in the conspiracy, and (4) the alleged co-conspirators had been interdependent. *See United States v. Wardell*, 591 F.3d 1279, 1287 (10th Cir. 2009).

On the charge of interstate travel, the prosecution needed to show that Ms. Garcia-Rodriguez had "(1) traveled or used facilities in interstate commerce; (2) with the intent to promote, manage, establish, carry on or facilitate the promotion, management, establishment, or carrying on of a prohibited activity; and (3) thereafter attempted to or did in fact engage in one of the proscribed activities." *United States v. Johnson*, 961 F.2d 1488, 1491 (10th Cir. 1992) (quoting *United States v. Dorrough*, 927 F.2d 498, 502 (10th Cir. 1991)).

Both convictions required proof that Ms. Garcia-Rodriguez had known about the methamphetamine hidden inside the car. Otherwise, Ms. Garcia-Rodriguez wouldn't have known the essential objective of the conspiracy or have intended to help carry out a conspiracy to distribute methamphetamine. *See United States v. Corrales*, 608 F.3d 654, 657 (10th Cir. 2010) (concluding that knowledge is an element of the crime of conspiracy to possess cocaine with intent to distribute); *United States v. Polowichak*, 783 F.2d 410, 415 (4th Cir. 1986) (stating that conviction of interstate travel required a specific intent to promote a business enterprise involving marijuana and "the major proof" of that intent would involve "knowledge of the load they were carrying").[2]

---

[2]    Knowledge alone may not have been enough to convict Ms. Garcia-Rodriguez: "Mere knowledge that drugs are present in a vehicle, without additional evidence to support a reasonable inference of a knowing

**5. The prosecution failed to show that Ms. Garcia-Rodriguez had known about the secret compartments of methamphetamine.**

Ms. Garcia-Rodriguez rode across the country in a car containing roughly 29 pounds of methamphetamine. "But mere presence, as a passenger, in a car found to be carrying drugs is insufficient to implicate the passenger in the conspiracy." *United States v. Jones*, 44 F.3d 860, 865 (10th Cir. 1995). The issue here is whether any other proof existed on Ms. Garcia-Rodriguez's knowledge of the methamphetamine.

**a. The jury could only speculate about Ms. Garcia-Rodriguez's knowledge.**

It is possible that Ms. Garcia-Rodriguez knew about the methamphetamine. For example, Mr. Garcia might have told Ms. Garcia-Rodriguez about the methamphetamine. Or Ms. Garcia-Rodriguez might have learned about the secret compartments by investigating the rear doors. In fact, the police ultimately discovered the secret compartments by manipulating the rear doors. For example, when the rear door on the driver's side wouldn't open, an officer manipulated the door from the inside and the panel fell off. And when an officer grabbed at the paneling on the rear passenger door, the interior panel fell off.

---

agreement to distribute them, is insufficient to sustain a conspiracy conviction." *United States v. Jones*, 44 F.3d 860, 865 (10th Cir. 1995).

But the prosecution didn't present evidence that Mr. Garcia had said anything to Ms. Garcia-Rodriguez about the secret compartments, that Ms. Garcia-Rodriguez had tried to open the rear door on the driver's side, or that she had grabbed at the paneling of the rear passenger door. So the jury could only speculate on whether Ms. Garcia-Rodriguez had known about the secret compartments of methamphetamine.

Such speculation isn't enough, for we and other circuits have uniformly regarded the evidence as insufficient to convict when a third-party hides drugs and the jury can only speculate on what a traveling companion knows. For example, we addressed this issue in *United States v. Valadez-Gallegos*, 162 F.3d 1256 (10th Cir. 1998). There the charge involved possession of ephedrine with knowledge that it would be used to make methamphetamine. *Id.* at 1257–58. The defendant rode in a truck with a camper shell. *Id.* at 1258. The police stopped the truck for violating traffic laws and later found ephedrine concealed in a hidden compartment in the ceiling of the camper. *Id.* The defendant was convicted; but we reversed, concluding that the prosecution had failed to show that the passenger knew about the ephedrine hidden in the camper. *Id.* at 1257, 1262.

We also addressed a passenger's knowledge in *United States v. Jones*, 44 F.3d 860 (10th Cir. 1995). There a car was stopped for traffic violations; inside were the driver and a passenger. *Id.* at 863. A later

7

search revealed over 200 kilograms of cocaine in luggage in the back seat and in the trunk. *Id.* at 864. The passenger was convicted of (1) possessing cocaine with intent to distribute and (2) conspiring to possess cocaine with intent to distribute. *Id.* at 862. We reversed both convictions, concluding that the evidence wasn't sufficient to find beyond a reasonable doubt that the passenger had known about the cocaine in the car. *Id.* at 866, 870.

We noted that the two individuals had "drive[n] together for a considerable length of time." *Id.* at 867. But the cocaine wasn't in plain view and didn't carry an odor. *Id.* at 864, 866–67. So we concluded that the jury would need to speculate in order to infer the passenger's knowledge of the cocaine. *Id.* at 865–67.

In declining to allow speculation of a passenger's knowledge, we've followed the approach taken in other circuits. For example, the D.C. Circuit addressed similar circumstances in *United States v. Teffera*, 985 F.2d 1082 (D.C. Cir. 1993). That case also involved two individuals traveling together. *Id.* at 1084. One of them had hidden cocaine in his pants, but the government charged his traveling companion. *Id.* at 1086. The government had reason to suspect complicity on the part of the traveling companion because he had lied to the police about where he was going and whether he was traveling alone. *Id.* These lies led to the traveling companion's conviction for possessing cocaine base with intent to distribute. *Id.* at 1084.

The D.C. Circuit reversed, concluding that the evidence was insufficient for guilt. *Id.* at 1087. The traveling companion might have known that criminal activity was afoot, but that possibility wasn't enough to convict on a particular crime:

> There are innumerable reasons why [the companion] might have wanted to distance himself from [the individual with the hidden cocaine base]. For example, [the companion] may have known that [the other individual] was frequently in trouble with the law and wished to avoid getting caught up in the same net with [him]. Or, [the companion] may have suspected that [the other individual] was currently involved in some sort of criminal venture, but did not know what the specific venture was—an inference that is particularly plausible here since the only direct evidence of [the other individual's] criminal activity was hidden beneath [the other individual's] clothes. Courts have found that evidence that implies this sort of general knowledge of criminality afoot is insufficient to sustain a conviction for aiding and abetting a specific crime.

*Id.* at 1086–87.

The Fifth Circuit took the same approach in *United States v. Ferg*, 504 F.2d 914 (5th Cir. 1974). There the defendant was a passenger in a car that had drugs (marijuana) concealed between the back seat and the frame of the car. *Id.* at 916. Based on the presence of marijuana in the car, the passenger was convicted of possessing marijuana with intent to distribute. *Id.* at 915. The Fifth Circuit reversed, concluding that the prosecution had failed to prove that the passenger had known about the marijuana concealed in the car. *Id.* at 917.

9

Other circuits have reached similar conclusions, reversing convictions built on assumptions that a passenger knew about drugs hidden inside a vehicle. *See, e.g.*, *United States v. Mendoza-Larios*, 416 F.3d 872, 873–74 (8th Cir. 2005) (concluding that the evidence was insufficient to find knowledge that cocaine had been concealed in the car by the individual who owned the car); *United States v. Pena*, 983 F.2d 71, 72–73 (6th Cir. 1993) (concluding that the evidence was insufficient to convict a passenger of aiding and abetting the possession of cocaine with intent to distribute when fifteen packages of cocaine had been hidden in a secret compartment in the bottom of the trunk and the passenger felt that something illegal was probably going on); *United States v. Terselich*, 885 F.2d 1094, 1098–99 (3d Cir. 1989) (concluding that the evidence was insufficient to support a passenger's conviction of possessing cocaine with intent to distribute when the cocaine had been hidden in the car's gasoline container); *United States v. Bonds*, 435 F.2d 164, 164 (9th Cir. 1970) (per curiam) (concluding that the evidence was insufficient to prove the passenger's knowledge of a substantial quantity of narcotics concealed under the back seat).

Like the passengers in these cases, Ms. Garcia-Rodriguez was riding in a vehicle that contained a large quantity of drugs hidden in secret compartments. The prosecution had suspicion—but no proof—that Ms. Garcia-Rodriguez had known about the drugs hidden in the car.

**b.     Ms. Garcia-Rodriguez's implausible statements don't constitute evidence that she knew about the methamphetamine.**

Ms. Garcia-Rodriguez might have known that criminal activity was afoot. After all, she didn't offer a credible explanation for the car trip. She and Mr. Garcia had driven over 1300 miles in roughly 21 hours. When stopped by the police, they explained that they were going to an Oklahoma casino to gamble. Mr. Garcia added that they had $200 to spend. Why would two individuals drive over 20 hours to spend $200 gambling in an Oklahoma casino and then turn around and drive over 20 hours to return home? And when stopped, Ms. Garcia-Rodriguez

- had a small amount of methamphetamine hidden inside her bra and

- appeared increasingly nervous throughout the traffic stop.

Lastly, Ms. Garcia-Rodriguez may have known that Mr. Garcia was up to something. When the police asked her if she was committing a crime, she replied: "Not me." Supp. R. vol. 2, at 63.

From these pieces of evidence, the jury could reasonably infer that Ms. Garcia-Rodriguez had suspected Mr. Garcia's participation in some sort of criminal mischief:

- Maybe he planned to commit some crime once he reached Oklahoma.

- Maybe he planned to buy drugs in Oklahoma and take them to California.

11

- Maybe Mr. Garcia had hidden contraband on his person or in the car.

All of these were possibilities. But which crime was Mr. Garcia committing? The jury could only speculate on what Ms. Garcia-Rodriguez may have thought.[3] Though she may have suspected some criminal activity, the prosecution lacked evidence that Ms. Garcia-Rodriguez knew what Mr. Garcia was doing. *See United States v. Leos-Quijada*, 107 F.3d 786, 795–96 (10th Cir. 1997) (stating that inconsistent accounts of travel plans aren't enough to connect the defendant to a particular drug venture); *accord United States v. Teffera*, 985 F.2d 1082, 1086 (D.C. Cir. 1993) (concluding that the evidence was insufficient to convict a passenger, who lied to the police about traveling alone, because he might have had many reasons to distance himself from his traveling companion).

---

[3]     In oral argument, the government argued that the jury could infer that Ms. Garcia-Rodriguez had known about the secret compartments of methamphetamine because she had a small bag of methamphetamine tucked in her bra. But the government hadn't made this argument in its response brief. There the government had argued more generally that the value and quantity of methamphetamine "together with the other evidence" could have led the factfinder to infer Ms. Garcia-Rodriguez's knowledge of the hidden drugs. Appellee's Resp. Br. at 57. Oral argument was too late for the government to rely on the small bag tucked in Ms. Garcia-Rodriguez's bra. *See United States v. Woodard*, 5 F.4th 1148, 1160 (10th Cir. 2021) (stating that it was too late for the government to raise harmlessness for the first time in oral argument); *United States v. Gaines*, 918 F.3d 793, 800–01 (10th Cir. 2019) ("We typically decline to consider an appellee's contentions raised for the first time in oral argument.").

12

We addressed similar circumstances in *United States v. Valadez-Gallegos*, 162 F.3d 1256 (10th Cir. 1998) and *United States v. Jones*, 44 F.3d 860 (10th Cir. 1995). As noted above, we concluded in these opinions that the prosecution hadn't proven the passenger's knowledge of the hidden substances (ephedrine and cocaine). *See* p. 7–8, above. The ephedrine had been hidden in the camper shell, and the cocaine had been hidden in luggage in the back seat and trunk.

In *Valadez-Gallegos*, we recognized that the passenger had given "inconsistent and contradictory statements concerning the dates and time of travel, night-time accommodations, weather, and the presence of another passenger on the trip." 162 F.3d at 1262. But the inconsistencies and contradictions in the passenger's "stories" created only suspicion of some illegal activity. *Id.* at 1263. This suspicion was not enough to uphold a conviction for the specific crime of possession of ephedrine with knowledge that it would be used to make methamphetamine. *Id.*

Similarly, the passenger in *Jones* had

- flown from Detroit to Los Angeles on a one-way ticket purchased with cash and

- told the officers that their destination and the contents of the car were whatever the driver had said.

44 F.3d at 864, 866. These facts could lead a jury to infer the passenger's suspicion of illegality. *Id.* at 866. But we concluded that "suspicion of illegality" wasn't enough "to prove participation in a conspiracy." *Id.*

13

Here too, Ms. Garcia-Rodriguez's implausible explanation could create suspicion. But that suspicion was not enough to find that Ms. Garcia-Rodriguez had known about the secret compartments of methamphetamine.

### c. The value of the methamphetamine doesn't constitute evidence of Ms. Garcia-Rodriguez's knowledge.

The government points out that the methamphetamine was expensive, carrying a wholesale value of roughly $75,000. And a jury can often assume that someone wouldn't plant expensive drugs in a car without informing the occupants. *United States v. Pulido-Jacobo*, 377 F.3d 1124, 1130 (10th Cir. 2004); *United States v. Hooks*, 780 F.2d 1526 (10th Cir. 1986). Whenever we've recognized this assumption, however, other evidence suggested that the occupant had known about the secret compartment.

For example, we recognized this assumption in *United States v. Pulido-Jacobo*, 377 F.3d 1124 (10th Cir. 2004). There expensive drugs were found in a car's secret compartment attached to the gas tank. *Id.* at 1128. We concluded that the evidence was sufficient to implicate two passengers, pointing out that the jury could infer that no one would have put the drugs in the car without informing the occupants. *Id.* at 1130. But there were three other pieces of evidence showing knowledge. First, one passenger had paid to repair the engine and a speaker box. *Id.* Second, the

14

other passenger had $1210 in cash and had been paid to go on the trip. *Id.* Third, the car had to stop frequently for fuel and would hold only a small amount of gasoline. *Id.*

We also recognized this assumption in *United States v. Hooks*, 780 F.2d 1526 (10th Cir. 1986). There the defendant's truck was stopped with PCP valued at $10,000. *Id.* at 1528–29, 1532. The defendant denied knowledge of the PCP; but the truck had reeked from the smell of PCP, the defendant had carried a substance used to purify PCP, he had given the police a false name, he had slurred his speech and had bloodshot eyes (though he didn't smell of alcohol), and he had appeared to keep the police away from the truck by immediately walking to the police car. *Id.* at 1532.

This kind of evidence was lacking here. The value could suggest that *Mr. Garcia* had known about the methamphetamine. But how would the value of the methamphetamine suggest *Ms. Garcia-Rodriguez*'s knowledge? *See United States v. Ramirez*, 176 F.3d 1179, 1181 (9th Cir. 1999) (stating that the value of the marijuana hidden in a spare tire could reasonably support an inference of knowledge on the part of the driver, but not the passenger). Mr. Garcia apparently needed someone to go on this quick road trip and invited Ms. Garcia-Rodriguez. But there wasn't any evidence that Mr. Garcia had told Ms. Garcia-Rodriguez about the methamphetamine. Without such evidence, the value of the methamphetamine doesn't suggest that Ms. Garcia-Rodriguez knew the

nature of Mr. Garcia's crime. *See United States v. Aponte*, 619 F.3d 799, 808 (8th Cir. 2010) (stating that "we are unaware of any case in which the drugs' value was the only circumstantial evidence to indicate the occupants were aware of drugs in their vehicle").

> ### d.    The appearance of the rear doors doesn't constitute evidence of Ms. Garcia-Rodriguez's knowledge.

The government points not only to the value of the methamphetamine but also to the possibility that Ms. Garcia-Rodriguez might have recognized that someone had modified the rear doors. Here the government argues that

- the rear door on the driver's side could not open and

- the rear door panel on the passenger side was so loose that it came off when a police officer opened the door.

This argument rests on speculation because the government didn't present any evidence that Ms. Garcia-Rodriguez had ever tried to open either of the rear doors.

We addressed a similar issue in *United States v. Valadez-Gallegos*, 162 F.3d 1256 (10th Cir. 1998). As noted above, we held there that the evidence was insufficient to show the passenger's knowledge of the illegal substance (ephedrine). *See* p. 7, above. There the defendant was riding in the cab of a truck, and "massive quantities" of ephedrine had been hidden in the ceiling of a camper. *Id.* at 1263. We noted that the camper had reeked of perfumed dryer sheets. *Id.* So if the defendant had opened the

16

camper door, he presumably would have noticed the unusual odor. But we relied on the absence of any evidence that the passenger had opened the camper's door. *Id.*

Here too, the prosecution presented no evidence that Ms. Garcia-Rodriguez had ever tried to open either of the rear doors. Mr. Garcia had just bought the car days earlier, and there wasn't any evidence to suggest that Ms. Garcia-Rodriguez had ridden in the car before their road trip. And there's no evidence that Ms. Garcia-Rodriguez had opened the rear doors.

The government also failed to present any evidence suggesting that the doors looked suspicious. If Ms. Garcia-Rodriguez had looked at the outside or inside of either car door, she would not have noticed anything unusual. For example, this is what the police saw when they later opened the rear door on the passenger side:



It looked like any other car door.

The government suggests that this door panel immediately fell off when the police opened it. Appellee's Resp. Br. at 53 (stating that "the passenger-side rear door panel was so loose it fell off when an officer opened that door"). But there's no evidence for this suggestion because the police officer admitted that he had grabbed at the paneling before it fell off:

> Q:     Did you in any way pull the molding to make it come off, or did it just come off when you opened the door?
>
> A:     I did grab ahold . . . to see if there was any wiggle room at all, like it had been manipulated, and that is how fast it came off.

Supp. R. vol. 2, at 186–87.

The videotape of the traffic stop shows the officer opening the door and grabbing the top of the door panel. After the officer had grabbed the door panel, it fell off.







If Ms. Garcia-Rodriguez had grabbed the rear passenger door the way that the officer did, she too might have seen the paneling fall off. But there wasn't any evidence that Ms. Garcia-Rodriguez had grabbed the door this way. Speculation doesn't substitute for evidence, and there wasn't any evidence that Ms. Garcia-Rodriguez had recognized something amiss with the doors to the back seat.

e.  **Mr. Garcia's text messages don't show Ms. Garcia-Rodriguez's knowledge of the purpose for the road trip.**

The government also relies on text messages between Mr. Garcia, Ms. Garcia-Rodriguez, and her brother. These text messages preceded the road trip. For example, hours before the trip, Mr. Garcia sent separate texts with a photograph of the car. One text went to Ms. Garcia-Rodriguez, the other to the individual who was apparently orchestrating the trip. In a separate exchange, Mr. Garcia asked Ms. Garcia-Rodriguez if she would go on the trip. She responded by asking which car they were taking, and Mr. Garcia replied that they would take the Malibu.

From these text messages, the government argues that Mr. Garcia was conveying to Ms. Garcia-Rodriguez that the Malibu had been rigged and loaded with methamphetamine. That's a possibility, of course, but there wasn't any evidence that this is what Mr. Garcia meant. Ms. Garcia-Rodriguez was about to ride 1300 miles each way and asked the driver which car they were going in, and the driver answered. The text exchange didn't say anything more. The jury could speculate that Mr. Garcia was sending Ms. Garcia-Rodriguez a coded text message, informing her that the Malibu had been packed with methamphetamine. But there was no evidence that this is what the text messages meant.

**f.     Ms. Garcia-Rodriguez's apparent nervousness may arouse suspicion, but doesn't supply evidence that she knew about the secret compartments of methamphetamine.**

Finally, the government relies on Ms. Garcia-Rodriguez's nervous behavior during the traffic stop. An officer testified that Ms. Garcia-Rodriguez had breathed heavily, bounced her foot up and down, and experienced shaking of her hands and face.

Extreme, persistent nervousness may supply relevant evidence of involvement in a drug trafficking scheme. *See United States v. West*, 219 F.3d 1171, 1179 (10th Cir. 2000) ("Although normal nervousness exhibited by those stopped for a traffic citation is usually entitled to limited significance in the probable cause analysis, in this case it is entitled to somewhat more weight because of the extreme and continued nervousness exhibited by [the defendant]."). But even when the nervousness is extreme, it doesn't show knowledge of a particular scheme. *See United States v. Leos-Quijada*, 107 F.3d 786, 795–96 (10th Cir. 1997) (concluding that evidence of nervousness did not permit an inference of the defendant's participation in a drug trafficking scheme).

The government argues that Ms. Garcia-Rodriguez's nervousness shows that she knew that some crime was being committed. There's little question about that, as she had a small bag of methamphetamine hidden in her bra. But the government didn't prosecute her for the methamphetamine hidden in her bra; the government instead prosecuted her for the many bags

21

of methamphetamine hidden in the fender well and in the door panels. And Ms. Garcia-Rodriguez's nervousness didn't supply any evidence that she was aware of those bags of methamphetamine. *See United States v. Terselich*, 885 F.2d 1094, 1098 (3d Cir. 1989) (concluding that the evidence was insufficient to convict a passenger, despite his nervousness, because it may have been attributable to the normal anxiety that a foreign individual could experience when stopped by the police).

We addressed a similar issue in *United States v. Jones*, 44 F.3d 860 (10th Cir. 1995). There the passenger reacted nervously when the police said that the car would be seized. *Id.* at 866. As noted above, the police ultimately found over 200 kilograms of cocaine in the car. *See* pp. 7–8, above. We concluded that the jury couldn't reasonably find knowledge of the cocaine from the passenger's nervous reaction:

> We view her reaction as a natural one for a cross-country traveler who had been detained by the police for close to two hours and who found herself in the custodial environment of a police station with no money and about to lose her mode of transportation.

*Jones*, 44 F.3d at 867.

Like the passenger in *Jones*, Ms. Garcia-Rodriguez was about to lose her mode of transportation while over 1000 miles from home. She also had a small baggie of methamphetamine in her bra. Like the defendant in *Jones*, Ms. Garcia-Rodriguez had a "natural" explanation for her nervous reaction. *Id.* We thus conclude that Ms. Garcia-Rodriguez's nervousness

22

was no more suggestive of knowledge than the *Jones* passenger's nervous reaction to the loss of her ride back to Detroit.

\* \* \*

The government presented evidence suggesting that the *driver* knew about the methamphetamine hidden in the car's secret compartments. But there wasn't any evidence that the driver had shared this knowledge with Ms. Garcia-Rodriguez. The methamphetamine was hidden in the fender well and the panels to the rear doors, and there wasn't any evidence that Ms. Garcia-Rodriguez had looked in the fender well or knew that the rear doors had secret compartments in the panels.

The jury could infer that Ms. Garcia-Rodriguez had reason to suspect some crime. But there wasn't any evidence that Ms. Garcia-Rodriguez had known that the crime involved a large amount of methamphetamine. The methamphetamine was hidden in secret compartments of a car, but the government presented no evidence that Ms. Garcia-Rodriguez had ridden in the car before her road trip with Mr. Garcia.

Her explanation for the road trip was implausible, so she might have assumed that Mr. Garcia was plotting some crime. But what crime was he plotting? Even if Ms. Garcia-Rodriguez had suspected a criminal plot, her implausible explanation wouldn't have shown knowledge that the plot involved a large amount of methamphetamine.

23

She was nervous when questioned. But she was over 1000 miles from home with methamphetamine hidden in her bra and may have suspected that Mr. Garcia was involved in some criminal scheme. In these circumstances, Ms. Garcia-Rodriguez's nervousness didn't constitute evidence that she knew about the secret compartments filled with methamphetamine.

With no evidence of such knowledge, the jury had insufficient evidence to find Ms. Garcia-Rodriguez guilty of conspiracy to distribute methamphetamine or interstate travel associated with a drug-trafficking enterprise. We thus reverse her convictions and remand with instructions to enter a judgment of acquittal.[4]

---

[4] Because we reverse Ms. Garcia-Rodriguez's convictions for insufficient evidence, we do not address her other appellate arguments.