FILED
United States Court of Appeals
Tenth Circuit

**April 22, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

In re:

SUE ANTROBUS;
KEN ANTROBUS,

Petitioners.

No. 09-4024
(D.C. No. 2:07-CR-307-DAK)
(D. Utah)

---

**ORDER**

---

Before **TACHA**, **TYMKOVICH**, and **GORSUCH**, Circuit Judges.

---

Claiming newly discovered evidence, Sue and Ken Antrobus, the parents of

Vanessa Quinn, petition us for a writ of mandamus. They seek to compel the

district court to reopen and revisit its previous denial of Ms. Quinn's status as a

victim, under the terms of Crime Victims' Rights Act (CVRA), 18 U.S.C. § 3771,

of Mackenzie Glade Hunter's crime of transferring a handgun to a juvenile in

violation of 18 U.S.C. § 922(x)(1). Primarily, they seek an evidentiary hearing to

present "new evidence." Alternatively, they ask us simply to declare Ms. Quinn

such a victim. For the reasons that follow, we DENY the petition.

**I. BACKGROUND**

On February 12, 2007, Sulejman Talovic murdered five people, including

Ms. Quinn, and injured four others, at the Trolley Square Shopping Center in

Salt Lake City, Utah. One of the guns Talovic used in his rampage was a handgun he had purchased from Hunter in the summer of 2006, when Talovic was a "juvenile," as defined in § 922(x). Talovic was killed on the scene.

Hunter pleaded guilty to illegally transferring a handgun to a juvenile. Before he was sentenced, the Antrobuses sought to have Ms. Quinn declared a victim of Hunter's crime so that they, on her behalf, could assert certain rights provided by the CVRA. *See, e.g.,* 18 U.S.C. § 3771(a)(4) (establishing "[t]he right to be reasonably heard" at the sentencing); *id.* § 3771(a)(6) (establishing "[t]he right to full and timely restitution as provided in law"). The district court denied the motion in an order dated January 3, 2008, finding the Antrobuses had failed to establish proximate causation between Hunter's sale of the gun and Talovic's shooting of their daughter—a prerequisite to "victim" status under the CVRA. *United States v. Hunter*, No. 2:07CR307DAK, at 8-12 (D. Utah Jan. 3, 2008) (memorandum decision and order denying "victim" status). In reaching this conclusion, the district court relied, in part, on the fact that "[a]t most, Hunter surmised that Talovic might use [the gun] to rob a bank," not to engage in a shooting spree. *Id.* at 10. "Even if Hunter believed that Talovic may commit a crime with the handgun," the district court held, the terrible nature of the crime Talovic ultimately committed "was unforeseeable" in its view. *Id.* at 8.

The Antrobuses timely filed a petition for a writ of mandamus under § 3771(d)(3) seeking review of that decision. *In re Antrobus*, 519 F.3d 1123

(10th Cir. 2008) ("*Antrobus I*"). In *Antrobus I*, this court concluded that, while the question was a "difficult" one, the district court did not clearly err in finding a lack of proximate cause between Hunter's gun sale and Talovic's shooting spree. *Id.* at 1125. We noted that extant case law on the subject was "not well-developed," and there was no controlling precedent in this jurisdiction. *Id.* In addition, we acknowledged that Talovic did not commit his crime until more than seven months after the sale, and apparently even after he ceased being a juvenile and thus within the ambit of the law Hunter violated. *Id.* Under those circumstances, and while acknowledging plausible arguments for a contrary result, we did not think the district judge was *clearly required* by law to hold Hunter's gun sale to be the proximate cause of Talovic's shooting spree, and thus properly the subject of a mandamus order from this court. *Id.* at 1125-26.

Immediately after the January 3 order, the Antrobuses moved the district court for access to the prosecution's files and grand jury transcripts, in an effort to supplement and bolster their case regarding foreseeability. In their supporting memorandum, they stated:

> If media reports on this case are to be believed, even defense counsel recognizes that Talovic made statements about robbing a bank that Hunter heard (although the defense position is that these statements were "jokes"). *See Man Who Sold Gun to Trolley Killer Guilty*, S.L. Trib., Nov. 2, 2007, at A4. Moreover, it is a matter of public record that the government has information proving foreseeability, as an allegation of foreseeability was contained in the Indictment in this case. The indictment in this matter charges that when he sold the gun to Talovic, the defendant had "*reasonable*

> *cause to know* that . . . [Talovic] intended to carry or otherwise possess, or discharge, or otherwise use the handgun *in the commission of a crime of violence*." *U.S. v. Hunter*, Indictment, Count II (emphases added).

Dist. Ct. Doc. 67 at 3. In fact, the indictment alleged that Hunter both "knew and had reasonable cause to know" that Talovic intended to use the gun in aid of a violent crime. The Antrobuses' memorandum also noted that counsel had requested from the United States Attorney's office a copy of a certain police report that would support their argument that Hunter had knowledge of Talovic's intentions. *Id.* at 4.

The district court denied the motion in an order dated January 8, 2008. *United States v. Hunter*, No. 2:07CR307DAK, at 3 (D. Utah Jan. 8, 2008) (memorandum decision and order denying motion to compel). This court then denied the Antrobuses' second CVRA mandamus petition, *In re Antrobus*, No. 08-4013, slip op. at 10 (10th Cir. Feb. 1, 2008) (unpublished) ("*Antrobus II*"). *Antrobus II* concluded that the district court did not abuse its discretion in refusing to compel production of evidence from the government's files or in refusing to release the grand jury transcripts. *Id.* at 6-7. In response to a government representation that it intended to "turn over certain information to the district court," we added, however, that "[i]t is, of course, within the district court's discretion to release any or all of this information." *Id.* at 9 n.2.

In early February, the government submitted two sealed documents to the district court for *in camera* review, "an ATF investigative report and a transcript of the grand jury proceeding in this matter." Dist. Ct. Doc. 109 at 1. The Antrobuses immediately moved for release of the ATF report, stating that the report "contains an account of the conversation between the defendant Mackenzie Hunter and Sulejman Talovic that Hunter related to the ATF agents. It is the understanding of the Antrobuses that Talovic told Hunter that he wanted a gun to rob a bank." *Id.* Doc. 111 at 1. The government did not oppose releasing the ATF report to the Antrobuses' counsel, but left the decision whether to release it to the district court's discretion. Ultimately, the district court denied release of the report, calling it an "intrusion or interference with an ongoing criminal matter," and explaining that it was unwilling "to create such a precedent [in favor of] individuals who are attempting to establish their status as victims of a given offense" in the absence of a Congressional directive to do so. *United States v. Hunter*, No. 2:07CR307DAK, at 2 (D. Utah Mar. 17, 2008). The district court then denied reconsideration of its denial. *United States v. Hunter*, No. 2:07CR307DAK, at 1 (D. Utah Apr. 21, 2008). The Antrobuses did not seek our review of the district court's decision.

The Antrobuses had, however, sought to pursue a direct appeal of Hunter's sentencing. This court confirmed again that their sole remedy was to seek mandamus relief under the CVRA and dismissed the appeal. *United States v.*

*Hunter*, 548 F.3d 1308, 1317 (10th Cir. 2008). In *Hunter*, however, the government stated in its response brief, without citation, that Talovic "said something to the effect that he wanted a gun to use to rob a bank." In light of this statement, the Antrobuses filed a motion asking this court to remand the case to the district court for rehearing, based on newly discovered evidence. We dismissed the motion as moot. *Id.* at 1316-17.

The Antrobuses then moved the district court for a new evidentiary hearing, at which they proposed to present the government's response-brief statement, along with the testimony of certain witnesses, as newly discovered evidence that Hunter knew that Talovic intended to use the gun in the commission of a bank robbery. The district court denied the motion, holding (1) the statement in the government's brief was not newly discovered evidence, and (2) "nothing contained in the ATF report or grand jury proceedings required it to alter its previous ruling." *United States v. Hunter*, No. 2:07CR307DAK, at 2 (D. Utah Feb. 10, 2009) (order denying motion for new hearing). The court also noted that the Antrobuses had not established under what authority the court could grant their request for a new hearing in the first place. *Id.* This mandamus petition followed. Pursuant to this court's order, the United States and Hunter have responded to the mandamus petition.

## II. PRELIMINARY MOTIONS

In conjunction with their petition, the Antrobuses have moved to waive the seventy-two-hour decision period set forth in § 3771(d)(3). The statute provides that this court shall issue a decision within seventy-two hours, but in no event shall we continue proceedings more than five days to enforce a right under the statute. We have not continued these proceedings beyond the statutory period, and thus we need not address whether a CVRA petitioner may waive the seventy-two-hour requirement.

In response to the government's claim that their thirty-seven-page petition is impermissibly overlong, the Antrobuses certify that their petition contains fewer than 14,000 words, and so complies with Fed. R. App. 32. Given our ruling in *Antrobus I* that § 3771(d)(3) contemplates the filing of a petition for mandamus, we are uncertain why the petitioners would rely on the word limitation for principal briefs set forth in Fed. R. App. P. 32, rather than consulting the mandamus rule, Fed. R. App. P. 21(d), which restricts mandamus petitions to thirty pages. Nevertheless, we grant the Antrobuses' alternative motion to allow their overlong mandamus petition in light of the complexity of this matter.

# III. THE PETITION

## A.     Jurisdiction and Standard of Review

Despite Mr. Hunter's suggestion to the contrary, we are satisfied that we have jurisdiction to entertain this petition. The CVRA contemplates that individuals asserting victim status may bring a motion in the district court even when criminal proceedings are not ongoing, and that the district court's denial of such a motion is reviewable by mandamus. 18 U.S.C. § 3771(d)(3).

In *Antrobus I*, this court held that a CVRA mandamus petition is subject to the traditional standard for seeking mandamus relief; that is, that the petitioner must show a "clear and indisputable" right to relief. 519 F.3d at 1124 (quotation omitted). In their current petition, the Antrobuses object, arguing as they did in *Antrobus I* that we should apply a more relaxed standard. We disagree.

In the first place, the Antrobuses "reincorporate by reference their previous arguments advanced" in *Antrobus I*. In analogous circumstances, we have disapproved of parties adopting their previous filings in lieu of fully setting forth their argument before this court, as such practice "provide[s] an effective means of circumventing the page limitations on briefs . . . and unnecessarily complicate[s] the task of an appellate judge." *Gaines-Tabb v. ICI Explosives, USA, Inc.*, 160 F.3d 613, 623-24 (10th Cir. 1998); *see also* 10th Cir. R. 28.4 (disapproving incorporation by reference in briefs).

Second, the Antrobuses are no longer entitled to make this argument. Our holding in *Antrobus I* that traditional mandamus review applies to the CVRA is surely the law of the case, *see United States v. Monsisvais*, 946 F.2d 114, 115-16 (10th Cir. 1991), and the Antrobuses did not seek *certiorari* to review it in the Supreme Court.

Finally, we note that the standard of review does not, in any event, affect our disposition of this petition. Because the district court did not err in holding the Antrobuses' submission did not present new evidence, relief must be denied under any standard of review.

B.    What is the Nature of the Purported Error?

The Antrobuses argue that the district court erred in denying them a new hearing based on newly discovered evidence. But their petition *nowhere* tells us what legal standard the district court, or we, should apply to their request for a new hearing, or what the source of that standard is. Did the district court fail to apply or misapply a particular statute, a rule, or a case? What legal standard should have governed the disposition of their motion? The petition does not say, and the omission is fatal.

To be sure, one can imagine many potential candidates. Before the district court, petitioners suggested several bases for its motion, including Fed. R. Civ. P. 60(b), Fed. R. Crim. P. 33, the district court's "inherent authority," and the CVRA's command that victims be "'treated with fairness.'" Dist. Ct. Doc. 147,

at 7-8; *id.* Doc. 152 at 2-4 (quoting 18 U.S.C. § 3771(a)(8)).  Before us, however, petitioners do not tell us which among these, if any, they think applies.  They simply seek reversal, silent with respect to what legal rubric they think compels that result.  In fact, they claim we need not even concern ourselves with the issue.  Because "[t]he district court *assumed* that the Antrobuses were legally entitled to pursue a new hearing if they could provide new evidence . . . the issue before this Court is simply whether the Antrobuses have new evidence or not."  Petition at 23-24 (emphasis added).

Under our rules, a petitioner or appellant may not leave us guessing about the nature of the district court's error.  "It is insufficient merely to state in one's brief that one is appealing an adverse ruling below without advancing reasoned argument as to the grounds for the appeal."  *Am. Airlines v. Christensen*, 967 F.2d 410, 415 n.8 (10th Cir. 1992).  A mandamus petition must state the issues presented by the application and the "reasons why the writ should issue." Fed. R. App. P. 21(a)(2).  Our rules on appeal are similar.  *See* Fed. R. App. P. 28(a)(9) (brief must state the reasons for relief with citations to authorities).  The Antrobuses have not met this basic requirement.  Whenever a party asks us to declare that an error has occurred, we require a "detailed explanation of how the district court erred."  *United States v. Apperson*, 441 F.3d 1162, 1195 (10th Cir. 2006).  The Antrobuses do not identify for us the source of the district court's duty to grant them a new hearing, which disables us from evaluating the district

court's decision.  This is an adequate basis to deny their application for mandamus.

C.      Law of the Case

Even if we could overlook the Antrobuses' failure to explain the legal basis for their request, to secure further proceedings in this matter they would have to overcome at least the gentlest standard that certainly applies:  the law of the case doctrine.[1]

The doctrine bars reopening a question already decided in an earlier stage of the same litigation, except in "narrow" and exceptional circumstances. *Monsisvais*, 946 F.2d at 117.  We have recognized only three such circumstances; the one most apparently compatible with the petitioners' request (an evidentiary hearing to present "new evidence") applies when a party can produce "'substantially different'" evidence from that available at the time of the original decision.  *Id.* (quoting *White v. Murtha*, 377 F.2d 428, 432 (5th Cir. 1967)).  The evidence must not only be different, but "so different and so central to the decision of the case" that we are left with "substantial doubt as to the correctness of the prior decision." *Weidner v. Thieret*, 932 F.2d 626, 630 (7th Cir. 1991) (quotations omitted).  Additionally, a party may not rely on evidence that was

---

[1]  We do not mean to foreclose the possibility that some higher standard, perhaps one analogous to a criminal defendant's burden when seeking a new trial under Fed. R. Crim. P. 33, or analogous to a civil litigant's burden under Fed. R. Civ. P. 60(b), may apply to requests like the Antrobuses'.  But we have no need to reach this issue today.

available to it at the time of the prior ruling.  *Monsisvais*, 946 F.2d at 117;

*Baumer v. United States*, 685 F.2d 1318, 1321 (11th Cir. 1982).  And we will not

apply the "new evidence" exception unless we are certain that it "specifically and

unquestionably applies."  *Monsisvais*, 946 F.2d at 117 (quotations omitted); *see*

*also Leggett v. Badger*, 798 F.2d 1387, 1389 n.2 (11th Cir. 1986) (per curiam).[2]

Even if they had argued it, the Antrobuses could not meet this standard.

They cannot show beyond question either that their new "evidence" qualifies as

previously unavailable or that it is so "substantially different" from that which

was previously presented that it creates a "substantial doubt" about the district

court's original decision.

1.     Previously Unavailable Evidence?

The Antrobuses claim they have new evidence showing that Talovic "said

something to the effect that he wanted a gun to use to rob a bank."  In support, the

Antrobuses point to the government's statement to this effect in its response brief

---

[2]  Neither of the other two exceptions apply.  The first covers the circumstance where "controlling authority has since made a contrary decision of law" governing the same issues.  *Monsisvais*, 946 F.2d at 117 (quotations omitted). The Antrobuses have referred us to no controlling decision contrary to the district court's original finding.  The remaining exception permits departure from the law of the case when the previous decision is "clearly erroneous and would work a manifest injustice."  *Id.* (quotations omitted).  A prior decision will not qualify for this exception by being "just maybe or probably wrong; it must . . . strike us as wrong with the force of a five-week-old, unrefrigerated dead fish."  *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988).  The Antrobuses have not attempted to carry this heavy burden, nor do we think they could.

in *Hunter*, and also claim that, in a new hearing, Officer Rick Blanchard of the Salt Lake City Police Department and "other witnesses," whose identities are unspecified, will confirm the point. Dist. Ct. Doc. 152 at 8.[3]

The difficulty is that the Antrobuses have not demonstrated that they were unable to present evidence along these very same lines over a year ago, when this litigation began. In our February 1, 2008, order denying their second mandamus petition, in which petitioners sought disclosure of the ATF report and grand jury records that allegedly contain the same evidence, we noted that "the Antrobuses have not shown, or even argued, that they have no other means to obtain the evidence they seek . . . . For example, they may be able to learn what Mr. Talovic told Mr. Hunter by deposing Mr. Hunter or serving him with interrogatories." *Antrobus II*, slip op. at 8. Nothing has changed. Petitioners still do not attempt to explain why they could not have, for example, questioned Officer Blanchard or their other unnamed witnesses in December 2007 and January 2008, when they first brought their claim. Had they made a record

---

[3] We assume without deciding for sake of this discussion that the Antrobuses have admissible evidence to present. Though there is authority holding that the government's statements in a brief are admissible as the admission of a party opponent, *e.g. United States v. Kattar*, 840 F.2d 118 (1st Cir. 1998), some courts have declined, for reasons of policy, to hold the government to the statements of its agents in criminal cases, *e.g. United States v. Powers*, 467 F.2d 1089, 1095 (7th Cir. 1972). And though the Antrobuses represent that they will elicit favorable testimony from Officer Blanchard and others, they have filed no affidavits or other declarations attesting to the contents of the proposed testimony.

showing diligent but stymied efforts on this front, we might have a different case. But in the case we have, the Antrobuses have failed to establish "unquestionably" that they have "new evidence" that was not previously available to them.

Along these lines, the Antrobuses also fail to explain why they did not seek review of the district court's refusal to release the ATF report even after the government did not object to its release. The district court offered no reason for its refusal aside from its unwillingness to "create such a precedent to individuals who are attempting to establish their status as victims of a given offense"; the district court thought this would be an "intrusion or interference with an ongoing criminal matter." *Hunter*, No. 2:07CR307DAK, at 2 (Mar. 17, 2008, order). In light of the fact that the purpose of the CVRA is to permit victim participation in ongoing criminal matters, and the lack of the government's opposition to the petitioners' request, we may very well have held the district court's refusal to grant access to the ATF report was deserving of a mandamus order. Unhappily, however, that is water over the dam. The Antrobuses never sought review of the district court's ruling, and even in their present petition still do not do so. Under our rules we are not permitted to invent arguments even for *pro se* litigants; certainly, we cannot revive ones foregone nearly a year ago by such well-counseled litigants.

2.     Substantially Different Evidence?

Even if we could say the Antrobuses's evidence was new, we still must ask whether it is unquestionably so different that it justifies departing from the district court's previous decision. In their current petition, the Antrobuses claim they can show that Hunter *knew* Talovic "said something to the effect that he wanted a gun to use to rob a bank." But the district court's initial decision was explicitly premised on an assumption that Hunter at least *believed* Talovic wanted the gun to rob a bank. We cannot say that this difference is so substantial that it "unquestionably" calls into doubt the district court's initial ruling.

As early as their initial motion seeking victim status, the Antrobuses argued from media reports that Talovic made statements to Hunter about wanting the gun to rob a bank. They also argued that this *must* be true because the government's indictment expressly charged that Hunter "*knew and had reasonable cause to know* that [Talovic] intended to carry or otherwise possess, or discharge or otherwise use the handgun *in the commission of a crime of violence*." Dist. Ct. Doc 1 (Indictment) at 2 (emphasis added).

In response to these arguments, the district court noted the absence of evidence supporting the Antrobuses' claim, but nonetheless proceeded on the assumption that "Hunter surmised that Talovic might use [the gun] to rob a bank." *Hunter*, No. 2:07CR307DAK, at 10 (Jan. 3, 2008 order). It held, however, that "[e]ven if Hunter believed that Talovic may commit a crime with the handgun,"

*id.* at 8, Hunter could not have reasonably foreseen the horrific nature of Talovic's plans. Later, the district court went a step further, clarifying that, in reaching its decision, it had assumed the "alleged statement" that Talovic told Hunter he would use the gun to commit a bank robbery "was made." *See Hunter*, No. 2:07CR307DAK, at 3 (Jan. 8, 2008 order). The new evidence that the Antrobuses seek to introduce adds little to this mix. The government's appellate brief in *Hunter* states merely that Talovic said "something to the effect" that he might rob a bank, and the Antrobuses suggest that its other witnesses will only confirm the point. Most generously, then, the Antrobuses' "new evidence" demonstrates only that Hunter *knew*—rather than just "surmised," *Hunter*, No. 2:07CR307DAK, at 10 (Jan. 3, 2008 order)—that Talovic intended to rob a bank. But that is not so substantial a difference as the Antrobuses insist.

According to the Oxford English Dictionary ("OED"), to "surmise" is to "suspect," "suppose," or "imagine" that something is true. By comparison, to "know" something is just to believe it to be true with a greater degree of moral certainty—or, as the OED puts it, "with assurance and on . . . an adequate objective foundation." OED, entry for "know, v." (quotation omitted). How sure Hunter was about his belief that Talovic intended to rob a bank is a question of degree and the petitioners have not shown that the answer to this question radically changes the proximate cause analysis as a matter of law. Neither have they even attempted to do so in their briefs before us. In these circumstances, we

-16-

cannot say that the Antrobuses' new evidence is "unquestionably" so different that it justifies departing from the district court's initial decision.

To be sure, we highlighted the difference between surmise and knowledge in *Antrobus I*. *See* 519 F.3d at 1125-26 & n.1. As we stated then, the scope of proximate cause in firearm sales cases is "not well-developed and is evolving," and it is at least conceivable that the difference between surmise and knowledge *could* prove meaningful in a proximate cause analysis. *Id.* But that is no longer the question before us. We are not writing on a clean slate about the law of proximate cause. Unless principles of finality are meaningless, the present petition poses the Antrobuses with a much higher hurdle than they faced, and failed to clear, in *Antrobus I*. The issue now is not whether Hunter's knowledge, as opposed to his surmise, about Talovic's intentions would make a difference in a proximate cause analysis. Rather, it is whether the gap between knowledge and surmise is so substantial that it unquestionably warrants reopening this litigation. Like the district court, we cannot say that it does in light of the lengthy and extensive history of this dispute, the district court's representation that it assumed Hunter's belief in Talovic's intent to rob a bank when making its original decision, the absence of any case law in this circuit contrary to the district court's proximate cause analysis, and the existence of extra-circuit case law supporting its view. *See id.* (also noting the more than seven-month gap between gun sale and crime, the very different nature of the crime actually committed from that

-17-

Talovic allegedly told Hunter he might commit, and the lack of Talovic's juvenile status at the time of the crime, among other things).

D.    Request to Be Declared Victims

Finally, as we have noted, the Antrobuses seek not just a new evidentiary hearing; alternatively, they ask that we simply declare Ms. Quinn to be a victim of Hunter's crime. This latter request goes well beyond the Antrobuses' district-court request for relief, which focused solely on obtaining a new evidentiary hearing. We generally decline to consider arguments that were not first made in the district court, *see Rosewood Servs., Inc. v. Sunflower Diversified Servs., Inc.*, 413 F.3d 1163, 1167 (10th Cir. 2005), and we are given no reason to depart from that rule here.

## IV.  CONCLUSION

This case has a frustrating procedural history. It is, for example, regrettable that the petitioners were not given access to the ATF report, given the government's lack of opposition. But in our system we do not possess perpetual power to revisit regrettable results, especially those we are never asked to review.

In the end, there is no one to blame here. The CVRA is a relatively new statute that effects dramatic changes to our traditional criminal justice system. The participants in that system—prosecutors, defendants, victims, and courts alike—are rightfully struggling with its scope and meaning. Understandably, the process of working out these changes may not be perfect. District courts and

prosecutors must become sensitive to Congress's new demand that victims have a seat at the table. At the same time, all litigants have to be aware of the constraints associated with efforts to relitigate issues repeatedly, and the scope of our review under law.

The Antrobuses' motion to proceed in forma pauperis is GRANTED. Their motion to file an overlong mandamus petition is GRANTED. Their motion to waive the seventy-two-hour statutory decision period is DENIED AS MOOT. And their petition for a writ of mandamus is DENIED.

Entered for the Court

Elisabeth A. Shumaker

ELISABETH A. SHUMAKER, Clerk