FILED
**United States Court of Appeals
Tenth Circuit**

**September 23, 2025**

**Christopher M. Wolpert
Clerk of Court**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JEFF WENG,

    Defendant - Appellant.

No. 24-6266
(D.C. No. 5:23-CR-00237-SLP-1)
(W.D. Okla.)

---

### ORDER AND JUDGMENT*

---

Before **HOLMES**, Chief Judge, **MORITZ**, and **ROSSMAN**, Circuit Judges.

---

Defendant-Appellant Jeff Weng was the manager of a marijuana grow in Wetumka, Oklahoma (the "Wetumka Grow" or the "Grow"). He employed his cousin, Tong Lin, to work as an intern at the Wetumka Grow. After federal authorities investigated the Grow and discovered nearly 20,000 marijuana plants at the facility, Mr. Weng and Mr. Lin were each charged with conspiracy to possess with intent to distribute 1,000 or more marijuana plants under 21 U.S.C. §§ 846 and 841(b)(1)(A). The cousins jointly proceeded to trial, and a Western District of Oklahoma jury found both guilty.

---

\* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Mr. Lin has already appealed his conviction to this court, but we rejected his challenges. *See United States v. Lin*, No. 24-6130, 2025 WL 894934 (10th Cir. Mar. 24, 2025) (unpublished). This matter concerns Mr. Weng's appeal, which raises many of the same challenges that Mr. Lin presented in his appeal. Mr. Weng argues that (1) the district court erred by granting the government's pretrial motion in limine to exclude any evidence of the Wetumka Grow's compliance with Oklahoma state marijuana law; (2) there was insufficient evidence establishing that Mr. Weng was a member of a marijuana conspiracy; (3) there was insufficient evidence establishing that the substance seized at the Wetumka Grow was, in fact, marijuana; and (4) the arguments raised in Mr. Lin's appellate briefing likewise support Mr. Weng's effort to reverse his conviction.

Exercising jurisdiction under 28 U.S.C. § 1291, we **affirm** the district court's judgment of conviction. Save for his sufficiency-of-the-evidence challenge to his membership in the conspiracy, Mr. Weng's challenges are all foreclosed by our decision in *Lin* under the law-of-the-case doctrine. And Mr. Weng's surviving sufficiency challenge fails under the substantial weight of evidence, most notably related to his role as the manager of the Wetumka Grow.

**I**

**A**

The federal Controlled Substances Act ("CSA") makes it unlawful for any person to knowingly or intentionally "possess with intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C. § 841(a)(1). Despite the legalization

2

in many states of medical or recreational marijuana use, marijuana is still classified as a controlled substance under Schedule I of the CSA. *Id.* § 812(c) (Schedule I) (c)(10); *see Feinberg v. Comm'r of Internal Revenue*, 916 F.3d 1330, 1333–34 (10th Cir. 2019). However, the Department of Justice "has declined to enforce § 841 when a person or company buys or sells marijuana in accordance with state law." *Green Sol. Retail, Inc. v. United States*, 855 F.3d 1111, 1114 (10th Cir. 2017).

The State of Oklahoma legalized the commercial cultivation of marijuana for medical uses in 2018. OKLA. STAT. tit. 63, § 422. Under Oklahoma law, prospective marijuana growers can apply for a state license and, if approved, sell marijuana to a licensed medical marijuana dispensary or a licensed medical marijuana processor within the state. *Id.* § 422C. Oklahoma is a seed-to-sale state, meaning marijuana grown within Oklahoma cannot be distributed or sold beyond state lines. *See id.*

## B

In late 2021, the Federal Bureau of Investigation ("FBI"), Oklahoma Bureau of Narcotics ("OBN"), and Oklahoma City Police Department began investigating certain illegal-distribution activities involving marijuana in Oklahoma. The joint investigation revealed that Brandon Ye was obtaining marijuana grown at state-licensed marijuana grows[1] in Oklahoma and unlawfully redistributing that marijuana outside the state.

---

[1] Marijuana farms are commonly referred to as marijuana "grows."

From April 2022 until his arrest in March 2023, Mr. Ye collected marijuana from various grows across Oklahoma, each of which was operated by Chinese nationals.  After making his pickups, Mr. Ye would aggregate the marijuana bags at his home before transferring them to a local warehouse, from which the marijuana was eventually forwarded out of state, including to New York.  To pick up the marijuana, Mr. Weng drove a van that was disguised as an Amazon delivery van. Law enforcement soon began tracking the movements of Mr. Ye's fake Amazon delivery van.

One of the grows from which Mr. Ye collected marijuana was the Wetumka Grow.  The Wetumka Grow presented itself as a state-licensed marijuana grow operating in compliance with Oklahoma law.  Beginning in December 2022, however, Mr. Ye visited the Wetumka Grow ten to fifteen times over a four-month period; on each visit, he picked up about 150 pounds of marijuana.  Three to four workers from the Wetumka Grow helped load the marijuana, which was vacuum-sealed and stored in cardboard boxes, into Mr. Ye's van.

Mr. Weng was the manager of the Wetumka Grow.  He worked as the Grow's manager for about two years, earning a salary of between $3,000 and $4,000 a month. Mr. Weng, an American citizen originally from China, spoke fluent English and Mandarin Chinese.  As manager, he oversaw the paperwork for the Wetumka Grow and tended to its marijuana plants.

Mr. Weng hired his cousin, Tong Lin, as a management intern at the Wetumka Grow.  Mr. Lin worked in this capacity for five months, earning about $2,500 a

4

month.  Mr. Lin, who spoke Mandarin Chinese but not English, was tasked with shadowing Mr. Weng at the Grow, learning how to complete state licensing paperwork, and recruiting additional employees.  When Mr. Ye collected marijuana from the Grow, Mr. Lin was among the employees who loaded the marijuana into the fake Amazon van.

In February 2023, as part of the joint investigation, the FBI asked two OBN agents to inspect the Wetumka Grow.  When the OBN agents arrived, they were met at the gates by an Asian male employee who spoke broken English.  After the agents identified themselves as law enforcement and asked to inspect the facility, the employee placed a phone call and handed his phone to the agents.  On the other end of the line was Mr. Weng, who, after speaking with the agents, instructed his employee to permit the agents to enter.

After the agents entered the Grow, Mr. Lin escorted them around the premises, showing them the grow houses, the workers' living quarters, and a residence where records were kept.  The agents took many photos of the facility during their inspection, and one of the agents identified marijuana plants in various stages of development.  The agent counted over 15,000 marijuana plants in total.

Three months later, in May 2023, FBI agents executed a search warrant at the Wetumka Grow.  During their search, the agents interviewed several employees, including Mr. Weng and Mr. Lin.  The two explained their roles and responsibilities at the Grow.

Pursuant to their search, the FBI agents seized 19,661 marijuana plants from the Wetumka Grow. The agents also discovered, in the attic above the master bedroom of the Grow's main residence, shrink-wrapped bundles of cash totaling $100,010.[2] In that same master bedroom, the agents found Mr. Weng's driver's license and bank card.

In June 2023, a Western District of Oklahoma grand jury indicted Mr. Weng and Mr. Lin with one count each of conspiracy to possess with intent to distribute 1,000 or more marijuana plants, a Schedule I controlled substance, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A).[3]

## C

Before trial, the government moved *in limine* to exclude any evidence that Mr. Lin and Mr. Weng (collectively, "Defendants") operated the Wetumka Grow in compliance with Oklahoma state law. The government argued that Oklahoma law was irrelevant to Defendants' federal charges and that evidence of the Grow's compliance with Oklahoma law would likely confuse the jury. In opposition,

---

[2]    Agents also located, in the laundry room of the residence, a firearm that Mr. Weng admitted belonged to him.

[3]    The government explained that it primarily brought charges against Defendants because the Wetumka Grow was not distributing marijuana in compliance with state law, given that Mr. Ye redistributed the Grow's marijuana outside Oklahoma's borders. *See Green Sol. Retail, Inc.*, 855 F.3d at 1114 (noting the Department of Justice "has declined to enforce § 841 when a person or company buys or sells marijuana in accordance with state law").

Defendants argued that compliance with Oklahoma law was probative of whether they acted with the requisite *mens rea* for the conspiracy charge.[4]

The district court preliminarily granted the government's motion (hereinafter the "Motion in Limine Order").  The court reasoned that evidence of the Grow's compliance with state law was irrelevant in Defendants' federal trial for allegedly violating federal narcotics laws and would cause undue confusion to the jury.  But the court stressed that its ruling was preliminary and that Defendants could seek to admit evidence at trial subject to receiving the necessary ruling from the court.

**D**

Mr. Weng and Mr. Lin were tried jointly in January 2024.  The government's case in chief elicited testimony from an OBN agent who inspected the Wetumka Grow in February 2023, FBI agents who searched the Wetumka Grow in May 2023, and an Oklahoma State Bureau of Investigation criminalist who examined and tested marijuana samples collected from the Wetumka Grow.  Additionally, Mr. Ye himself testified as a government witness regarding his regular marijuana pickups from the Wetumka Grow using his fake Amazon van.  Neither Mr. Weng nor Mr. Lin took the stand in their own defense or offered any witness testimony.

During the trial, Mr. Lin's counsel made several attempts to cross-examine the government's witnesses regarding the legality of the Wetumka Grow's operations

---

[4]    This response was initially filed by Mr. Lin alone, but Mr. Weng later moved to join Mr. Lin's response.  The district court accepted that the responsive filing represented the views of both Defendants.

under Oklahoma law. Each time, the government objected and directed the court to its Motion in Limine Order. The district court sustained each such objection.

The district court instructed the jury regarding the elements of the conspiracy charge that Mr. Weng faced, stating that it must find beyond a reasonable doubt that:

> [1] two or more persons agreed to violate the federal drug laws, here, as described in Count 1, the federal drug law prohibiting possession of controlled substances with intent to distribute and distribution of the same; [2] the defendant knew the essential objective of the conspiracy; [3] the defendant knowingly and voluntarily involved himself in the conspiracy and; [4] there was interdependence among the members of the conspiracy.

App., Vol. II, at 314 (Jury Trial Tr., Vol. II, held Jan. 18, 2024). The court further instructed the jury that, in reaching its verdict, the jury was "not to consider whether marijuana is lawful or unlawful under Oklahoma state law." *Id.* at 317.

The jury returned guilty verdicts for both Defendants. The jury also specifically found that the conspiracy involved 1,000 or more marijuana plants. The district court subsequently sentenced Mr. Weng to 120 months of imprisonment followed by five years of supervised release. Mr. Lin appealed his judgment of conviction to this court. *See Lin*, 2025 WL 894934. We rejected each of Mr. Lin's challenges and affirmed his conviction. *See id.* at *1–*3.

Mr. Weng now appeals his judgment of conviction. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II

Mr. Weng challenges his conviction on four grounds. First, he argues that the district court erred by granting the government's motion in limine. Second,

8

Mr. Weng maintains that the trial evidence was insufficient to establish his membership in the marijuana conspiracy. Third, he contends that the trial evidence was insufficient to establish that the substance seized from the Wetumka Grow was marijuana. Fourth, he joins in the arguments raised in Mr. Lin's appeal.[5]

We decline to disturb the district court's judgment of conviction. Aside from Mr. Weng's sufficiency-of-the-evidence challenge regarding his own alleged membership in the charged conspiracy, each of Mr. Weng's challenges is foreclosed under the law-of-the-case doctrine by our decision in *Lin*. And Mr. Weng's remaining sufficiency challenge fails given the trial evidence establishing his knowledge of and participation in the conspiracy.

**A**

**1**

"Under the 'law of the case' doctrine, 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *United States v. Trent*, 884 F.3d 985, 994 (10th Cir. 2018) (quoting *United States v. Monsisvais*, 946 F.2d 114, 115 (10th Cir. 1991)). "Furthermore, when a rule of law has been decided adversely to one or more codefendants, the law of the case doctrine precludes all other codefendants from relitigating the legal

---

[5]    At the time Mr. Weng filed his opening brief in the instant appeal, Mr. Lin's appeal had not yet been decided.

issue." *United States v. LaHue*, 261 F.3d 993, 1010 (10th Cir. 2001) (quoting *United States v. Aramony*, 166 F.3d 655, 661 (4th Cir. 1999)).

"[W]e will depart from the law of the case doctrine in three exceptionally narrow circumstances: (1) when the evidence in a subsequent trial is substantially different; (2) when controlling authority has subsequently made a contrary decision of the law applicable to such issues; or (3) when the decision was clearly erroneous and would work a manifest injustice." *Id.* at 1010–11 (quoting *United States v. Alvarez*, 142 F.3d 1243, 1247 (10th Cir. 1998)).  The first exception—i.e., the substantial difference exception—applies only when a party directs us to "new evidence" that is "'substantially different' [] from that available at the time of the original decision." *In re Antrobus*, 563 F.3d 1092, 1098 (10th Cir. 2009) (quoting *Monsisvais*, 946 F.2d at 117).  And such "evidence must not only be different, but 'so different and so central to the decision of the case' that we are left with 'substantial doubt as to the correctness of the prior decision.'" *Id.* (quoting *Weidner v. Thieret*, 932 F.2d 626, 630 (7th Cir. 1991)).

**2**

Mr. Weng pursues some of the same challenges raised by his codefendant, Mr. Lin, in his appeal, *Lin*, 2025 WL 894934.  Because we considered and rejected each of Mr. Lin's challenges, *see id.* at *1–3, our conclusions of law in rejecting Mr. Lin's challenges remain binding for purposes of Mr. Weng's appellate issues under the law-of-the-case doctrine.  *See LaHue*, 261 F.3d at 1010 ("[W]hen a rule of law has been decided adversely to one or more codefendants, the law of the case doctrine

10

precludes all other codefendants from relitigating the legal issue." (quoting *Aramony*, 166 F.3d at 661)).

As relevant here, Mr. Lin argued that (1) "the district court erred in granting the government's motion in limine, excluding any evidence of the defendants' alleged compliance with state law"; and (2) "the government failed to provide sufficient evidence that the plants recovered from the Wetumka [G]row were in fact marijuana." *Lin*, 2025 WL 894934, at \*2. And we rejected each of these specific challenges in *Lin*. *Id.* Furthermore, after rejecting Mr. Lin's remaining challenges,[6] we affirmed his judgment of conviction. *See id.* at \*1–\*3.

Mr. Weng's identical challenges are foreclosed by the law-of-the-case doctrine based on our holdings in *Lin*. To recap, Mr. Weng argues that the district court erred by granting the government's motion *in limine*. In particular, Mr. Weng argues that the court erred by holding that evidence of state-law compliance is not relevant to the *mens rea* element of a federal drug conspiracy—a challenge we rejected in *Lin*. *See* 2025 WL 894934, at \*2.[7] Mr. Weng also argues that the government failed to

---

[6] Mr. Lin also made several other arguments: that the evidence at trial was insufficient to prove he had the requisite *mens rea* that marijuana possession and distribution was illegal, that the doctrine of entrapment by estoppel applied to his case, that the district court erred by charging the jury with a deliberate-ignorance instruction, and that the cumulative impact of the district court's errors deprived him of a fair trial. *Lin*, 2025 WL 894934, at \*1–\*3.

[7] Notably, Mr. Weng's argument with respect to the government's motion *in limine* seemingly poses a distinct challenge that we did not expressly address in *Lin*: whether certain comments by government counsel and trial witnesses violated the Motion in Limine Order and opened the door to the admission of evidence establishing that the Wetumka Grow was allegedly in compliance with Oklahoma

11

provide sufficient evidence that the plants recovered from the Wetumka Grow were actually marijuana plants; again, we rejected an identical challenge in *Lin*. *See id.* Lastly, Mr. Weng blanketly "joins in the briefs and arguments advanced by his co-defendant [Mr.] Lin [in] Mr. Lin's appeal." Aplt.'s Opening Br. at 51 (bold typeface and capitalization omitted).[8] We rejected all of Mr. Lin's appellate challenges in *Lin*, *see* 2025 WL 894934, at *1–*3. With one exception,[9] the same legal conclusions

---

law. Yet, we reject Mr. Weng's contention. Mr. Weng waits until his reply brief to fulsomely make this argument, so we deem the argument waived. *See United States v. Leffler*, 942 F.3d 1192, 1197 (10th Cir. 2019) ("[W]e generally do not consider arguments made for the first time on appeal in an appellant's reply brief and deem those arguments waived.").

[8]     The parties dispute whether Mr. Weng is permitted to join Mr. Lin's arguments. Mr. Weng argues such joinder is permissible because his and Mr. Lin's appeals are companion cases, whereas the government contends Federal Rule of Appellate Procedure 28(i) only allows joining in when cases are consolidated. We need not decide this question because we rejected each of Mr. Lin's challenges in his appeal, so even assuming, *arguendo*, that Mr. Weng can adopt by reference Mr. Lin's appellate challenges under Rule 28(i), those challenges are foreclosed by the law-of-the-case doctrine.

[9]     The one exception is whether there was a factual basis for giving a deliberate ignorance instruction. This is a defendant-specific question. *See United States v. Oti*, 872 F.3d 678, 697 (5th Cir. 2017) ("A boilerplate deliberate ignorance instruction that applies to all defendants in a case is inappropriate absent a showing that the proper factual basis exists as to each defendant."). The law-of-the-case doctrine therefore does not apply. But incorporation of Mr. Lin's deliberate ignorance arguments does not adequately raise the issue as to Mr. Weng. As noted in *Lin*, the deliberate ignorance instruction was not objected to and is therefore reviewed for plain error. *Lin*, 2025 WL 894934, at *3. Mr. Weng states that "there was absolutely no evidence that Mr. Weng ever 'closed his eyes' to facts suggesting illegality at the Wetumka" Grow, and he presumably relies on Mr. Lin's briefing to satisfy the last three prongs of plain error. Aplt.'s Opening Br. at 51–52. But at the absolute minimum, Mr. Weng had to independently brief the third plain-error prong—that the error "affect[ed his] substantial rights," *United States v. Ness*, 124 F.4th 839, 844 (10th Cir. 2024), i.e., that it "affected the outcome of the district court

that we reached there apply with full force to Mr. Weng's (fourth) blanket challenge—which is based on the wholesale adoption of Mr. Lin's appellate challenges; consequently, Mr. Weng's blanket challenge is likewise foreclosed by the law-of-the-case doctrine.

In an effort to salvage his appellate arguments, Mr. Weng asks us to deviate from application of the law-of-the-case doctrine because he is entitled to an exception to that doctrine—specifically, he argues that the evidence of his guilt at trial was "substantially different" than that of Mr. Lin. Aplt.'s Reply Br. at 3–4.[10] Mr. Weng seemingly invokes the substantial-difference exception to the law-of-the-case doctrine, under which "the evidence in a subsequent trial is substantially different." *LaHue*, 261 F.3d at 1010. Mr. Weng explains that the evidence establishing Mr. Lin's guilt, particularly the evidence that Mr. Lin helped load marijuana into Mr. Ye's fake Amazon van, could not apply to Mr. Weng's own guilt because there was no evidence of his interaction with Mr. Ye or the fake Amazon van.

---

proceedings," *United States v. Chatwin*, 60 F.4th 604, 607 (10th Cir. 2023) (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)). That question inherently depends on the trial evidence against each defendant. Mr. Weng had to independently brief it, but he did not do so. Accordingly, that challenge is waived. *United States v. Flaming*, 133 F.4th 1011, 1030 (10th Cir. 2025).

[10]     In his briefing, Mr. Weng only applied this exception to his challenge to the Motion in Limine Order. But at oral argument, his counsel intimated that his invocation of the exception applied as well to the other challenges in Mr. Weng's opening brief. We therefore exercise our discretion to adopt this broader reading of the scope of his "substantially different" argument.

We are unpersuaded.  For starters, the substantial-difference exception is available only where a party identifies "new evidence" that is "substantially different [] from that available at the time of the original decision."  *Antrobus*, 563 F.3d at 1098 (quotation omitted).  But Mr. Weng does not direct us to any new evidence not previously available to this court in Mr. Lin's appeal.  In particular, since Mr. Weng does not point us to a proceeding that occurred after his joint trial with Mr. Lin, he cannot show that any new evidence was brought to light in a "subsequent trial," as the substantial-difference exception contemplates.  *LaHue*, 261 F.3d at 1010.

Nor can Mr. Weng show that any purported differences between the evidence relevant to his guilt versus Mr. Lin's guilt was "central to the decision[s] of the case" that are at issue here, *Antrobus*, 563 F.3d at 1098 (quotation omitted)—*viz.*, the Motion in Limine Order, the sufficiency of the evidence as to the identity of the substance seized at the Wetumka Grow, or the remaining issues in Mr. Lin's appeal.  If anything, any differences between the evidence as to each codefendant pertain only to Mr. Weng's sufficiency-of-the-evidence challenge and, more specially, the nature of his participation in the charged conspiracy.  And we acknowledge that this aspect of Mr. Weng's appeal—indeed, only this aspect—is not foreclosed by the law of the case.

Thus, the substantial-difference exception is inapposite to Mr. Weng's appeal.  As a result, the law-of-the-case doctrine controls Mr. Weng's challenges to the Motion in Limine Order, the sufficiency of the evidence as to the identity of the

14

substance seized at the Wetumka Grow, and the arguments he attempts to adopt by reference from Mr. Lin's appellate pleadings.

**B**

All that remains of Mr. Weng's appeal is his sufficiency-of-the-evidence challenge regarding his "membership in the conspiracy charged." Aplt.'s Opening Br. at 38 (bold typeface and capitalization omitted). Specifically, Mr. Weng argues that "[t]he evidence at trial was devoid of any testimony or exhibits that [he] was aware of, or participated in, any sales of marijuana from the Wetumka [Grow]." *Id.* (emphasis omitted).

**1**

Mr. Weng did not preserve his sufficiency-of-the-evidence challenge at trial and did not move for a judgment of acquittal under Federal Rule of Criminal Procedure 29. We therefore review his challenge for plain error. *See, e.g.*, *United States v. McGehee*, 672 F.3d 860, 873 (10th Cir. 2012). "To demonstrate plain error, a defendant must show: '(1) error, (2) that is [clear or obvious], which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *United States v. Flaming*, 133 F.4th 1011, 1017–18 (10th Cir. 2025) (quoting *United States v. Mike*, 632 F.3d 686, 691–92 (10th Cir. 2011)). But "a conviction in the absence of sufficient evidence will almost always satisfy all four plain-error requirements." *United States v. Gallegos*, 784 F.3d 1356, 1359 (10th Cir. 2015). Hence, our "review for plain error in this context differs little from [a] de novo review of a properly preserved sufficiency claim." *Id.*

"Under the sufficiency-of-the-evidence test, we view the evidence in the light most favorable to the government and ask whether the evidence—and any reasonable inferences to be drawn from it—would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt." *Id.* "We must view the evidence, both direct and circumstantial, in the light most favorable to the government, and without weighing conflicting evidence or considering the credibility of witnesses, determine whether that evidence, if believed, would establish each element of the crime." *United States v. Murphy*, 100 F.4th 1184, 1196 (10th Cir. 2024) (quoting *United States v. Fuller*, 751 F.3d 1150, 1153 (10th Cir. 2014)). "Our review is very deferential; we will not overturn a jury's verdict unless no reasonable juror could have concluded, on the basis of the evidence presented, that the defendant was guilty of the crime charged." *United States v. Gabaldon*, 389 F.3d 1090, 1094 (10th Cir. 2004). Where, as here, the defendant did not present his own evidence at trial, "our review of the record is necessarily limited to evidence produced during the [g]overnment's case-in-chief alone." *United States v. Delgado-Uribe*, 363 F.3d 1077, 1082 (10th Cir. 2004).

"While the evidence supporting the conviction must be substantial and do more than raise a mere suspicion of guilt, it need not conclusively exclude every other reasonable hypothesis and it need not negate all possibilities except guilt." *United States v. Erickson*, 561 F.3d 1150, 1158–59 (10th Cir. 2009) (quoting *United States v. Burkley*, 513 F.3d 1183, 1188 (10th Cir. 2008)). However, we cannot uphold a conviction "that was obtained by nothing more than piling inference upon inference . . . or where the evidence raises no more than a mere suspicion of guilt."

16

*United States v. Walker*, 74 F.4th 1163, 1190 (10th Cir. 2023) (omission in original) (quoting *United States v. Rufai*, 732 F.3d 1175, 1188 (10th Cir. 2013)).

**2**

To find Mr. Weng guilty of conspiracy to possess with intent to distribute 1,000 or more marijuana plants under 21 U.S.C. §§ 846 and 841(b)(1)(A), the government was required to prove that: (1) Mr. Weng and another person agreed to possess with the intent to distribute 1,000 or more marijuana plants; (2) Mr. Weng knew the essential objectives of the conspiracy; (3) Mr. Weng knowingly and voluntarily became part of the conspiracy; and (4) there was interdependence among the members of the conspiracy. *See United States v. Arras*, 373 F.3d 1071, 1074 (10th Cir. 2004).

Our review of the record convinces us that the trial evidence was sufficient for a reasonable juror to convict Mr. Weng on his conspiracy charge. At trial, recall the salient pieces of evidence that the government presented to the jury. First, Mr. Weng was the manager of the Wetumka Grow and, in that role, he oversaw paperwork for the Grow, cared for its marijuana plants, and supervised the Grow's employees. Second, Mr. Weng had worked at the Grow for approximately two years. Third, he earned a salary of $3,000 to $4,000 a month. Fourth, Mr. Weng hired his cousin, Mr. Lin, to work at the Grow for $2,500 a month; Mr. Lin would shadow Mr. Weng, learn to complete state licensing paperwork, and recruit additional employees to work at the Grow. Fifth, law enforcement discovered $100,010 in cash in the attic of

17

Mr. Weng's bedroom.[11]  Sixth, Mr. Lin, who was Mr. Weng's subordinate, helped load marijuana into Mr. Ye's fake Amazon van for distribution; Mr. Ye collected 150 pounds of marijuana from the Wetumka Grow each visit.  Seventh, the FBI seized 19,661 marijuana plants at the Wetumka Grow.

Viewing this evidence in the light most favorable to the government, *Gallegos*, 784 F.3d at 1359, a reasonable juror could infer, beyond a reasonable doubt, that Mr. Weng knowingly participated in a conspiracy to possess with the intent to distribute 1,000 or more marijuana plants.  The evidence showed that Mr. Weng was in charge of the operations of the Wetumka Grow as its manager, knew that the Grow received substantial amounts of money for its operations—based on his salary, his intern's salary, and the $100,010 in cash found in his attic—and oversaw employees who were directly involved in distributing significant quantities of marijuana via Mr. Ye's fake Amazon van.  These facts are sufficient to satisfy each of the elements of the conspiracy charge.  *See Arras*, 373 F.3d at 1074.  To put it plainly, there appears to be no logical explanation—nor does Mr. Weng attempt to offer one—for what was being done with the marijuana grown at the Wetumka Grow other than possession with the end goal of distribution.

Each of Mr. Weng's counterarguments are unpersuasive.  *First*, Mr. Weng contends that the evidence did not establish that he was "a member of the

---

[11]    Recall that Mr. Weng's driver's license and bank card were found in the master bedroom.  On appeal, Mr. Weng does not contest that this was his bedroom or that the money discovered in the attic belonged to him.

18

conspiracy." Aplt.'s Opening Br. at 38. The essence of Mr. Weng's position may be stated concisely: "Unless the government can show that Jeff Weng *did something* to assist the conspiracy or could be shown to have *known what was happening and agreed to participate in the scheme*, the conviction must be overturned." *Id.* at 41. In this regard, Mr. Weng emphasizes his view that Mr. "Ye did not know Weng, [and] never spoke to Weng," and "there was no evidence adduced that Mr. Weng ever saw, was involved in, or knew about the truck(s) or the marijuana being provided to Mr. Ye." *Id.* at 40, 42.

However, as a matter of law and fact, Mr. Weng's first argument is misguided. Because Mr. Weng was convicted of involvement in a narcotics conspiracy, the government was not obliged to prove that he took *any* overt physical action (i.e., did something). *See, e.g.*, *United States v. Mier-Garces*, 967 F.3d 1003, 1014 (10th Cir. 2020) ("Of course, in drug-trafficking conspiracies prosecuted under 21 U.S.C. § 846, like those here, 'an overt act is not a necessary element of conspiracy.'" (quoting *United States v. Savaiano*, 843 F.2d 1280, 1294 (10th Cir. 1988))). In other words, the government did not need to show that he did something. Moreover, the government also was not required to prove that Mr. Weng knew or spoke with Mr. Ye or any others involved in distributing the marijuana that Mr. Ye collected at the Wetumka Grow. *See, e.g.*, *United States v. Fox*, 902 F.2d 1508, 1519 (10th Cir. 1990) (upholding jury instructions that stated, "[o]ne may become a member of a conspiracy without full knowledge of all the details of the conspiracy"); *Savaiano*,

19

843 F.2d at 1294 ("A defendant need not have knowledge of all the details or all the members of the conspiracy and may play only a minor role.").

As relevant to Mr. Weng's argument here, all the government had to prove was that Mr. Weng knew the essential objectives of the conspiracy and knowingly and voluntarily became part of it. And we conclude that—for the reasons that we have outlined above—the government presented sufficient evidence for a rational jury to find that this was so. *See, e.g.*, *Arras*, 373 F.3d at 1074 (requiring that the government prove that a defendant "knowingly and voluntarily *became part of* the conspiracies" (emphasis added)). Briefly stated, Mr. Weng's status as manager of the Wetumka Grow and his significant and close personal and working relationship with Mr. Lin—his cousin and intern—would have permitted a reasonable jury to infer that Mr. Weng had knowledge of and authorized Mr. Lin's participation in Mr. Ye's repeated pickups—even if he was not directly involved in the pickups himself.

And Mr. Weng's reliance on our 2024 decision in *United States v. Garcia Rodriguez*, 93 F.4th 1162 (10th Cir. 2024), *see* Aplt.'s Opening Br. at 42–43, does not lead us to a different conclusion. There, the defendant "rode across the country [as a passenger] in a car containing roughly 29 pounds of methamphetamine," which was hidden in "secret compartments" in the car. *Garcia Rodriguez*, 93 F.4th at 1165–66. We noted that her challenged convictions—including her conviction of narcotics-trafficking conspiracy, as here—"required proof that [the defendant] had known about the methamphetamine hidden inside the car. Otherwise, [the defendant]

20

wouldn't have known the essential objective of the conspiracy or have intended to help carry out a conspiracy to distribute methamphetamine." *Id.* at 1166.

We observed that "the prosecution didn't present evidence that [the car's driver who was the defendant's husband] had said anything to [the defendant] about the secret compartments," and there was no further evidence bearing on the issue of knowledge of the compartments, and consequently, "the jury could only speculate on whether [the defendant] had known about the secret compartments of methamphetamine." *Id.* at 1167. And, as we reasoned, "[s]uch speculation isn't enough" to support her convictions. *Id.*

The distinctions between Mr. Weng's circumstances and those of the defendant in *Garcia Rodriguez* are patent. A reasonable jury could have inferred here that Mr. Weng—as manager of the Wetumka Grow who handled the paperwork and tended the plants—was fully aware of the large quantity of marijuana being produced at the Grow (the presence of illegal drugs was hardly hidden there) and also the conspiratorial objective of distributing those drugs for money (in light of the roughly $100,000 in cash in his bedroom), as well as his voluntary participation in that conspiracy. A rational jury would have found ample basis for those inferences *in the evidence of this case*—not speculation, as in *Garcia Rodriguez*. Accordingly, we think *Garcia Rodriguez* is patently distinguishable, and Mr. Weng's reliance on it is misplaced.

*Second*, Mr. Weng avers that he was unaware of any "sales of marijuana" from the Wetumka Grow. Aplt.'s Opening Br. at 38. That argument presents a red

21

herring. The government only needed to prove Mr. Weng possessed marijuana plants with the intent of *distribution*, not that marijuana was being *sold*. *See Arras*, 373 F.3d at 1074. In any event, the presence of a significant quantity of cash in Mr. Weng's bedroom attic could easily justify a rational inference that the Wetumka Grow was not only distributing marijuana, but in fact selling it for profit. *See United States v. Martinez*, 938 F.2d 1078, 1085 (10th Cir. 1991) ("[E]vidence of a defendant's association with sizeable amounts of cash may be probative of his or her involvement in [a drug distribution] business, and thus bear on the question of defendant's guilt of the charged drug distribution offenses.").

*Third*, Mr. Weng emphasizes that the evidence at trial was insufficient for conviction because it did not connect him to Mr. Ye's marijuana pickups with the fake Amazon van at the Wetumka Grow. He rests this argument on the faulty premise that Mr. Ye's pickups established the criminal nature of the charged conspiracy. Under the CSA, conspiring to possess 1,000 marijuana plants with the intent to distribute, standing alone, is unlawful. 21 U.S.C. §§ 841(a)(1), 812(c)(10). *So even if* the trial evidence could not be said to directly link Mr. Weng to Mr. Ye's pickups, the number of marijuana plants recovered from the Wetumka Grow and the substantial sum of cash discovered in Mr. Weng's attic were sufficient to establish that Mr. Weng—who admits he was manager of the Wetumka Grow—conspired to possess those plants with the intent to distribute them. And besides, there *was* evidence that tied Mr. Weng—albeit indirectly—to Mr. Ye's pickups: Mr. Lin, Mr. Weng's direct subordinate, was among the employees who helped load marijuana

22

into Mr. Ye's van. *See United States v. Atencio*, 435 F.3d 1222, 1235 (10th Cir. 2006) (holding that the jury heard sufficient evidence to convict a defendant under 21 U.S.C. § 848(b) for continuing a criminal enterprise by violating federal drug laws because the defendant "held a supervisory position with respect to . . . drug transporters").

*Fourth*, Mr. Weng argues there was no evidence of his participation in "Black Market" possession or distribution of marijuana. Aplt.'s Opening Br. at 38–39. This argument is a non-starter: notwithstanding marijuana's legal status for certain purposes under Oklahoma law, conspiracy to possess with intent to distribute marijuana remains—categorically—a federal crime. *See Feinberg*, 916 F.3d at 1333–34.

Accordingly, because the evidence at trial was sufficient for a reasonable juror to find Mr. Weng guilty of the charged conspiracy, Mr. Weng has failed to establish even the first prong of the plain-error rubric—a showing of error. And his sufficiency-of-the-evidence challenge therefore fails.

## III

For the above reasons, we **AFFIRM** the district court's judgment of conviction.

Entered for the Court

Jerome A. Holmes
Chief Judge